## John Mattson v. Qualey Construction Co.

1. MASTER AND SERVANT—*Duty of Master to Use Reasonable Care.* —It is the duty of the master to use reasonable care and diligence in providing safe machinery, tracks and switches for the use of those engaged in its service.

2. SAME—*What Risks the Servant Assumes.*—Subject to the implied undertaking of the master that he will use reasonable care to furnish safe premises, machinery and appliances, and to employ competent and prudent co-employes, the servant assumes all the risks ordinarily incident to the employment.

3. VERDICT—*Where the Court May Direct a Verdict for the Defendant.*—Where there is no evidence before the jury on material issues in favor of the party holding the affirmative on which the jury could reasonably find in his favor, the court will direct a verdict in favor of the other party.

**Action in Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed July 17, 1900.

**Statement by the Court.**—Appellant sued to recover for personal injuries. At the conclusion of all the evidence the court, upon motion, instructed the jury to find for the defendant.

Appellant was at the time of the accident, and had been for nearly a year previous, in the employ of appellee as trackmaker, building tramways and doing general labor upon the drainage canal. He was injured by falling in front of a tram car, upon which he was riding.

The tracks upon which he was hurt were temporary in character and moved from day to day or week to week, as

the exigencies of the work demanded. They were laid in and from the excavation up the side, and then along the ground at the surface, to what was known as the "dumps," and were used to carry off material removed in the progress of the excavation. They were not even or level. The blacksmith, who testified at the instance of appellant, says:

"The tracks were never even and level like tracks of a railroad. They tip a little when you first put in new stuff. * * * I noticed, where the car dumped, the tracks were not in right good shape."

He states that at the place where the accident occurred the track "was kind of sidling," or in other words, one side of the track was lower than the other. They had been laid in March, when the ground was frozen, and when the accident occurred, in April, the frost was coming out, rendering them more than usually uneven.

The cars were so constructed that the box containing the load could be turned over by releasing a hook attached to a chain on the side of the car, thus "dumping" its contents beside the tracks. They were operated by cable. Two were usually drawn up together. The employe in charge rode on the platform or bumper of the first car. It was his duty, after reaching the level surface, to pull a pin which released the cable. He was then at liberty to jump off, and wait for the return of the cars from the dump, where they were hauled by horses or mules attached after the cable was released. He then hooked the cable on again and let the cars down slowly to the steam shovel in the excavation, riding down himself on the rear platform or bumper. This was called "riding the incline."

Appellant when injured was thus riding the incline. He says he had at first refused to do so that morning, but finally agreed to for half a day, until another man could be obtained for the purpose. He says he "never had worked before in this incline," but had "worked on a whole lot of different dumps on that canal before that."

The accident occurred between 2 and 3 P. M. Appellant had been engaged in the same work since about 10 A. M.

of the same day, excepting the noon hour. His statement is as follows :

"When the accident happened I had one foot on the bumper and one on the hind end; the car dumped, only the box of the car; the chain slipped off, unhooked and tipped over, struck me over the back and threw me down." He fell or jumped in front of the moving car, which ran over his leg at the ankle, cutting off his foot. He was coming up with filled cars, and was at or near the place where he usually pulled the pin releasing the cable, and jumped off. The car was not upset, and did not leave the track, but the so-called "box" prematurely turned over, dumping its contents.

What caused the unfastening of the hook and release of the chain holding the car upright is not clear. The blacksmith whose duty it was to keep the cars in repair, states that he examined that particular car after the accident to see if he could find anything wrong. He says he found "the hook was a little loose. It might have been tighter and perhaps it would not have turned down." But he says he can not say that this was the cause of the cars dumping. He seems rather inclined to the belief that the uneven condition of the track, throwing the weight on one side, caused a slackening of the chain, which may have released the hook. The car in question had "dumped" three times on the same spot in the morning of that day, but not while operated by appellee. It had been examined by the superintendent and two other persons about an hour before the accident. Nothing wrong was discovered, but a new pin or hook was put in. The blacksmith had been ordered to fix it, and orders had been given to load the car evenly, to check any tendency to tip while moving over the uneven tracks.

M. W. CAGNEY and H. G. COLSON, attorneys for appellant.

O. W. DYNES, attorney for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court. It is contended by appellant's counsel that there was suf-

ficient evidence to go to the jury, tending to show that the injury was caused by the negligence of appellee, and that the court erred in directing a verdict for the defendant at the conclusion of all the evidence.

The declaration alleged that "it was the duty of the defendant to keep and maintain its cars, machinery and tracks in a safe and proper condition." The real duty, however, is to use ordinary and reasonable care and diligence so to do; and it is insisted by appellee's counsel that the evidence, with all reasonable inferences to be drawn therefrom, is insufficient to support any other verdict than not guilty. Offut v. Columbian Exposition, 175 Ill. 472; Boyle v. I. C. R. R. Co., 88 Ill. App. 255.

Appellant's counsel urges that the car could not have dumped unless the hook was turned, and that it was for the jury to determine what caused the hook to turn, and whether the dumping of the car was not caused by reason of the defective condition of the track. The law did not, however, require appellee to furnish machinery and tracks for employes which should be absolutely safe or of the best character. The "duty imposed is to use reasonable and ordinary care and diligence in providing safe machinery, tracks and switches for the use of those engaged in its service." Ill. C. Co. v. Sanders, 166 Ill. 279 (278); Hess v. Rosenthal, 160 Ill. 621 (628). Subject to the implied undertaking of the master that he will use all reasonable care to furnish safe premises, machinery and appliances, and to employ competent and prudent co-employes, the servant assumes all the risks ordinarily incident to the employment. Consolidated Coal Co. v. Haenni, 146 Ill. 614 (623). In the case before us, a jury might have found that the turning of the hook and the dumping of the car were caused by the unevenness of the track at the place where the accident occurred, and still impute no liability to appellee. By moving to instruct the jury to find appellee not guilty, the latter's counsel admitted the truth of all evidence tending to show that the uneven condition of the tramway caused the dumping of the car, and all inferences to be fairly and

rationally drawn therefrom. (Offut v. Columbian Exposition, *supra*.) But the material issue was the negligence of the defendant, and where there is no evidence before the jury on such material issue in favor of the party holding the affirmative on which the jury could, in the eye of the law, reasonably find in his favor, the court may direct a verdict in favor of the defendant. Frazer v. Howe, 106 Ill. 563. Whether a party has been guilty of negligence is a question of fact for the jury, it is true; but like every other question of fact, it must be sustained by evidence if it is to be submitted to their consideration.

The tracks in question were temporary in their nature, frequently moved, and there is no evidence tending to show that they were not laid and maintained in as safe a manner as the conditions permitted. They were necessarily laid to answer the purpose for which they were used, upon the ordinary surface of the earth in part, and in part upon the material excavated, which was soft, unsettled and uneven. Appellant himself had been employed in laying these tracks, and was entirely familiar with their construction and condition at the place where he was hurt.

So, too, with reference to the hook or pin which fastened the car. It was somewhat loose, but no more so apparently than its ordinary use required. Its condition and the fact that it was liable to be loosened from outside causes and so dump the car, was as well known to appellant as to any one. It was, so far as appears, the best-known appliance in use for the purpose. It is undisputed that appellee's superintendent with two assistants had inspected the car an hour before the accident, after appellant had begun to operate it, and had put in a new hook or pin. A subsequent examination by appellant's witness, the blacksmith, immediately after the accident, showed no defect. This witness, who was fifteen to twenty feet away when the accident occurred, could not find any defect in the car or fastening to which he could ascribe the premature dumping. While the tracks were uneven, they were not so much so as to derail the car. The only possible effect their condition could have had in

causing the accident may have been to throw the weight of the load on the side, bearing down the car so as to slacken the chain on that side enough to loosen the hook or pin, and release the box so as to cause it to dump its contents.    In this alone, so far as appears, there was no danger to appellant.    He was not in the way of the dumping car.    The injury seems to have been caused by his being unprepared for it and taken by surprise.    He was struck, he says, by the chain, and was thrown, or fell, in front of the moving car.    The injury is serious and deplorable, but was not, so far as this evidence shows, caused by negligence of appellee, and the trial court committed no error in directing a verdict accordingly.

Appellee introduced in evidence a release, which appellant claims is no bar to the action, because obtained by alleged fraud and because of failure of the consideration. In view of the conclusion upon the question of negligence, as above stated, it is not necessary to consider this branch of the case at any length.    While we do not regard the objections made to the release as sustained by the evidence, it is immaterial if appellant has no cause of action, whether the release was valid or not.

The judgment of the Circuit Court must be affirmed.