## Marshall Field & Company v. Bertha LeBosky.

### Gen. No. 13,033.

1. STAIRWAY—*duty of owner of building with respect to construction of.* The law does not require that the owner or occupant of a building must provide a certain kind of stairway for the use of persons desiring to go up or down, or be held guilty of negligence.

2. MASTER—*limit of obligation in furnishing appliances.* The law does not require a master to furnish for employees such appli-

ances as are of the best character or are absolutely safe, but to use reasonable and ordinary care and diligence in that respect.

Baker, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Axel Chytraus, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed, with finding of fact. Opinion filed April 12, 1907.

**Statement by the Court.** This is an appeal from a judgment recovered by appellee for personal injuries.

The injuries complained of were received, it is said, in the retail dry goods store conducted by appellant on State street, Chicago. The accident occurred February 23, 1903. In company with another woman, appellee was going down a stairway leading from the first floor of the store to the basement, and claims to have been crowded upon "a narrow portion of said stairway, which was of a winding pattern or kind, by reason whereof she * * * tripped and slipped on said stairway."

In descending this stairway the first three steps lead straight down toward the west. At the fourth step the stairway began to turn to the right or toward the east, around an iron newel post five inches square, which stood at the east end of the fourth step from the top. Around the newel post this fourth step and the next three steps descending from it centered, the four steps making a half turn to the right. At the junction of these four steps with the newel post each of them narrowed almost to a point; their width there not exceeding two inches. From that point of junction they broadened out rapidly. A few inches west of the newel post they were from six to seven inches wide and at the west end farthest from the newel post they were from eighteen to twenty-two inches wide, two or three times wider than the steps above or below them. From the fourth of these steps which completed the turn to the right, ten steps of uniform width descended straight toward the north. At that point there was another turn to the right around a second newel post, with the same arrangement of four steps

centering at the post as at the first or upper turn. The width of these four steps constituting the lower turn, at their ends furthest from the post was respectively twenty, twenty-two, twenty and eighteen inches,—very considerably wider than the width of the steps of any ordinary stairs. From the lowest of these four steps which completed the turn at that point three steps of ordinary width descended to the floor of the basement. These last three steps were somewhat shorter than those above them, the effect of which was to make the stairway narrower at the bottom than at the turn just above them.

The steps are described as made of marble, having a "sandy finish" on the surface "as marble steps are usually finished, marble sandy finish." That part of the building was new, having been open to the public about six months. One of plaintiff's witnesses, a builder of forty years' experience, testifies as follows: "I examined the tread of those stairs and know the material of which they are made. They are in good condition—they were at that time. There is no exception that I know of to that. I don't think there was any exception taken to the finish of the stairs. I think they were properly finished. I think the stairs—the general construction of the stairs—was in a good mechanical form. I do not know whether I am allowed to criticise it. The stairs are nice stairs, I say that. The surface of the tread is the usual condition. I do not see anything peculiar about it at all. Of course they are finished, they are solid and finished, but that is what we expect."

Appellee's statement as to the accident is that on the day it occurred she, in company with a friend, entered appellant's store on State street, and "took the staircase" in question to go down to the basement; that in going down the second turn of the stairs, the turn nearest the bottom, she was, as she states it, "crowded to the narrow portion of the stairway by reason of people coming up, and I fell, and fell to the bottom of the stairway. I just didn't know what happened to me." She states that it was a snowy, blustering day, that the sidewalk was wet, with the snow melting on it,

that she had heavy storm shoes on but no rubbers, that she does not remember whether she had been in that part of the store before, that it had been opened two or three months before, that she knew there were elevators and had been in them many times, had been in the basement of the store several times before, but had never gone down this particular stairway, nor any stairway to the basement, that in going down she led the way, that in going past the first turn she walked on the wide part of the stairs, that she saw the narrow part and avoided it; that after she made the first turn and started to go straight down she saw there was another turn she would have to make, that as she was going to the second turn people were coming up and she was crowded over to the right in going down, toward the narrow portion of the second turn and slipped; that she was near the turn when she first saw several persons coming up, that she hardly thinks anybody was in front of her going down.    She says "there was not enough space to hold my foot—the tread was so narrow and the steps were wet and slippery, and I was pushed and fell, and fell down every step.    I was crowded, rather, by the people coming up"; that those coming up "brushed by me.    They did not push me like that. They came in contact with me with their clothes and crowded me over as far as they could, as far as I could go.    They crowded me up against what was just like a post like this, as the stairs turn round"; that she saw a railing on the other side of the stairway; that "at the time they crowded me I was at the turn, at the last turn going to the basement, the lowest turn.    I was standing on the steps before the turn, I believe the last step before the turn.    That is not the step I slipped on.    I slipped on the first step on the lowest turn; the first one that is narrowed."

She says she was as far to the right as she could go, before she tripped or slipped, and there was nothing there on that side to take hold of.    In answer to the question "What made you slip or trip or fall?" she answered, "The stairs. The stairs were wet and slippery and I was crowded and fell"; that she "did not stop at any time at the second turn

—did not pause before I came to that second turn." The wet on the stairs "was like snow melted on the stairway and made it sort of—such as might have been brought in on the feet of customers." Subsequently she states that the "balustrade" was there. and she "was pushed up against it," but that "there was no running rail." The witness before referred to, a builder called in her behalf who had examined and measured the stairs, states that there were "iron balusters" with the usual hand rail on top at the place where appellee says she fell, which "continued down to the newel which is in the angle toward the basement, and then from there down to the basement newel, with the baluster in all cases and the hardwood rail." From the step above the last turn, the step on which appellee states she stood when she was crowded to the right, and which step is "a straight step without any turn," there "is a continuous rail until you come to the first story ceiling."

FRANK P. LEFFINGWELL, for appellant.

DANIEL L. CRUICE, for appellee; JACOB C. LEBOSKY, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of appellant first, that the court erred in not sustaining the motion to exclude the plaintiff's testimony on the ground of variance between the evidence and the declaration, in that the declaration simply alleges that the plaintiff was injured by tripping and slipping on the stairway, whereas her testimony shows that she was injured by falling on the stairway and down to the floor; second, that the evidence fails to show appellant guilty of negligence, or that appellee was not guilty of contributory negligence, and that the court erred therefore in denying appellant's motion to direct the jury to find appellant not guilty. It is also insisted that there was error in giving and refusing instructions, in not submitting to the jury cer-

Marshall Field & Co. v. LeBosky.

tain questions of fact as requested by appellant's attorney, in rulings upon evidence, and that the damages are excessive.

If it be true that the evidence does not sustain the charge of negligence against appellant, or that the accident was the result of contributory negligence on the part of appellee, it will be unnecessary to consider the other alleged errors assigned. There are three counts in the declaration. The first of these charges in substance that appellant negligently failed to provide a reasonably safe stairway "which was of a winding pattern" at the place where the accident occurred. The second count charges that the stairway was negligently permitted to be overcrowded with persons going up and down; and the third, that appellant negligently permitted the stairway to be and remain in a slippery and unsafe condition.

The contention in behalf of appellee that the stairway was not reasonably safe, is based upon the arrangement of the steps at the two half turns, at the lower of which turns appellee states that she fell. By that construction, the four steps which constituted the half turn to the right when descending the stairs were much wider at the outer side of the stairway than the steps above and below them, but narrowed nearly to a point where they intersected the newel post at the inner side. Appellee states that she fell at the lower half turn, at or near this point of intersection. A witness called in her behalf, a builder of forty years' experience, testifies that the "general construction of the stairs was in good mechanical form," with nothing peculiar about it at all. In this the testimony of the witness is in accord with common observation and experience. Probably most houses where stairs are necessary possess stairways of similar construction. They are found everywhere in buildings, ancient and modern. Persons using them are expected to tread on the broad portion of such steps, and not to attempt to find room for the feet at the post or center around which the stairs turn. The outer tread of these steps was in the case at bar made wider than the usual stair and obviously

afforded a safe place over which to go up or down.    There
was nothing hidden nor concealed.    There was plenty of
light.    Appellee's attorneys ask, "Was the design of the
stairway reasonably safe?"    So far as we discover, they do
not attempt to answer their own question, but content them-
selves with urging that the verdict of the jury and the
judgment of the trial court should conclude us on the point.
If by this it is meant we must hold a stairway of such char-
acter to be negligently constructed, because the verdict of
the jury and judgment of the court upon the whole case were
in favor of appellee, we cannot concur in the contention.
There are probably no stairs of whatever construction which
do not call for care in their use.    It is common experience
that persons fall or slip on stairs where the steps are of
uniform width, depth and height with straight descent,
hand rails and all ordinary appliances.    There is no evi-
dence here tending to show that, properly used, steps of the
construction employed in the case at bar are not as safe as
others.    In fact they are evidently more safe at the turn
if properly used by reason of their greater width of tread
at the outer portion of the half circle they describe, than the
ordinary straight up and down stairs of narrower step or
tread.    There is language in Larkin v. O'Neill, 119 N. Y.,
221, quoted with approval from Crafter v. Metropolitan
Railway Co. (L. R. (I. C. P.) 300) which we deem in
point, as follows:  "The line must be drawn in these cases
between suggestions and possible precautions, and evidence
of actual negligence, such as ought reasonably and properly
be left to a jury.    It is difficult in some cases to determine
where the line is to be drawn, but here I have no hesitation
in saying that there was no evidence of negligence which
could properly be left to the jury.    There was nothing un-
usual in the construction of the staircase.    The use of brass
for protecting the edges of stairs and absence of a hand rail,
which alone are relied on by the plaintiff, are by no means
unusual in staircases of a similar description where the
traffic is great.    They were obvious to everyone using the
stairs, and were well known to the plaintiff himself.    The

plaintiff has no right to complain of the absence of accommodation of an unusual kind." We are unaware of any authorities and none is called to our attention where it has been held that the owner or occupant of a building must provide a certain kind of stairway for use of persons desiring to go up and down, or be held guilty of negligence. It is no more negligence *per se* to use one of several ordinary and familiar forms of construction than others. In the use of appliances or machinery the law does not require a master to furnish for employees such appliances as are of the best character or absolutely safe, but to use reasonable and ordinary care and diligence in that respect. I. C. R. R. Co. v. Sanders, 166 Ill., 270, 278; Mattson v. Qualey Const'n Co., 90 Ill. App., 260–263. Upon like reasoning it does not appear why one owning or building a house or store should under ordinary circumstances be required to furnish stairs which shall be absolutely safe, or such as some third party may after an accident conclude might have been better. As above stated, probably no stairs are absolutely safe. We know of none upon which persons using them without due care can be guaranteed against slipping or falling. The stairway here in question was of a very common and familiar form of construction and, so far as appears, perfect of its kind. There is no evidence of negligence in these respects in the present case and whatever might be said in reference to such construction under other conditions, we find no evidence of negligence in its use in the case at bar.

The second averment of negligence made in the declaration charges that appellant negligently permitted the stairway to be "overcrowded with persons going up and down the same by reason whereof the plaintiff * * * was necessarily and unavoidably crowded and forced upon and against the narrow portion thereof, by reason whereof she necessarily and unavoidably tripped and slipped on said stairway." This averment is not supported by the testimony. Plaintiff states that she was "crowded to the narrow portion of the stairway by reason of people coming up"; that she "was pushed and fell"; that "they brushed by me.

They did not push me like that. They came in contact with me with their clothes, and crowded me over as far as they could as far as I could go"; that "there were several persons coming up." Her companion who was behind her in going down the stairs says that "at the second turn there was a crowd coming up, and all of a sudden, the first thing I knew she was lying at the bottom of the stairs." It is apparent from her testimony that appellee was not physically pushed by any of this so called "crowd" which appellee says consisted of "several persons." She merely stepped to the right to allow these persons to pass her. She testifies further: "At the time they crowded me I was at the turn, at the last turn going to the basement, the lowest turn. I was standing on the steps before the turn, I believe the last step before the turn. That is not the step I slipped on. I slipped on the first step on the lowest turn, the first one that is narrowed." The purport of this is that she was crowded to the right, or rather stepped in that direction to keep from contact with the garments of persons coming up the stairs when she was on the last step before the turn, a step of the usual width of tread, upon which had she simply stood still until the persons to avoid whom she had moved over that way had passed her, she would have remained in perfect safety. She did not, according to her own version, slip "at the time they crowded me," but afterward when she tried to put her foot on the narrow part of the next step, "the first one that narrowed." She states that "before I tripped or slipped at all, I was as far to the right as I could go on the turn there." It is apparent therefore that she was not, as the declaration charges, "necessarily and unavoidably crowded and forced upon and against the narrow portion" of the stairway. It is apparent moreover from this testimony that if the stairway was "overcrowded," the evidence fails to show the alleged fact.

The third charge is that appellant negligently permitted the stairway to be and remain in a slippery and unsafe condition. Upon this point appellee's testimony shows the reason she fell to have been that she put her foot on the

narrow part where the treadway of the first of the steps "narrowed," as she says, at the turn. Her statement is "there was not enough space to hold my foot—the tread was so narrow and the steps were wet and slippery." If there was not enough space to hold her foot, where she seems to have deliberately placed it, that fact sufficiently accounts for her falling. She herself had come in from the street through slush and snow without rubbers. The evidence tends to show that the stairs were wet with moisture brought in by customers' feet and garments from the street. This condition was perfectly apparent to appellee. It does not appear that it was owing to any lack of ordinary and reasonable care on the part of appellant, nor that appellant had any knowledge of such alleged condition. The stairs were, it may be, wet, just as appellee's shoes were wet, and there is nothing in the evidence to warrant the conclusion that the one or the other was the cause of the injury complained of.

Appellee insists that I. C. R. R. Co. v. Keegan, 210 Ill., 150–156, is decisive of this case in favor of appellee. In this we cannot concur. It was undoubtedly "the duty of the appellant to use reasonable care to keep the said stairway in a reasonably safe condition," but in the case at bar there is no evidence tending to show that this duty had not been complied with. There is no evidence as to how wet the stairs were, nor evidence tending to show except by inference that they were rendered unsafe thereby, nor as to how long they had been in that condition, nor that appellant had notice of such alleged unsafe condition, and it is clear from the evidence the injury was not occasioned by such alleged moisture.

It affirmatively appears from the plaintiff's testimony that her fall was owing to her attempting to place her foot where she says there was not room for it. Appellee testifies that she passed the first turn walking on the wide part of the steps that constituted it; that "after I had made the first turn and started to go straight north down those stairs, I saw there was another turn I would have to make." There

were ten of these steps leading "straight north down the stairs," before she reached the first of the four steps constituting the second turn. This lower turn was precisely like the upper one she had passed. The conditions were the same in all respects, both as to construction, dampness and in all other respects. The only difference according to her evidence is that when she was "near the turn" she "first saw the people coming up. I may have been a step or so ahead of it. There were several persons coming up." This evidence tends to show that appellee saw these persons coming up from below in ample time to protect herself by simply standing still and waiting. She was under no necessity of proceeding until they had passed. Instead of waiting she voluntarily stepped over toward the narrow ends of the steps composing the turn, apparently to avoid brushing against them, and continued going down, putting her feet on the narrow treads, which she says she saw and avoided at the prior turn. This sufficiently accounts for her fall. At all events the evidence fails to support the charge that appellee was injured in consequence of negligence averred in the declaration.

In view of this conclusion it is unnecessary to consider other questions presented in the briefs. The judgment of the Superior Court must be reversed, with a finding of facts.

*Reversed, with finding of facts.*

MR. JUSTICE BAKER, dissenting.