**Marguerite Dight Turner, Appellee, v. Chicago Housing Authority, a Municipal Corporation, Appellant.**

**Gen. No. 46,748.**

First District, Second Division.

June 26, 1956.

Released for publication September 11, 1956.

Eckert, Peterson & Lowry, of Chicago, for appellant; A. R. Peterson, Harold W. Huff, and Herbert C. Loth, Jr., all of Chicago, of counsel.

David Alswang, and Schwartzberg & Barnett, all of Chicago, for appellee; David Alswang, of Chicago, of counsel.

JUDGE ROBSON delivered the opinion of the court.

This is an action by Marguerite Dight Turner, plaintiff, to recover damages for injuries caused from falling down a stairway allegedly due to the negligence of the defendant, Chicago Housing Authority, a municipal corporation, in the construction and maintenance of a stairway in the Ida B. Wells public housing project.

The jury found for the plaintiff and awarded damages in the sum of $25,000. Defendant appeals from the trial court's denial of its motions for directed verdict, judgment notwithstanding the verdict and new trial.

Defendant's principal contention on appeal is that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because plaintiff failed to make out a prima facie case of negligent construction and maintenance of the stairway by defendant. Defendant also contends that errors in the rulings on the evidence and the giving of instructions entitled it to a new trial.

■ As to defendant's first contention the evidence, viewed in a light most favorable to plaintiff, reveals that she was, on August 6, 1948, a household employee of a third-floor tenant of the Ida B. Wells housing project, which was constructed and maintained by defendant. On that date, as she was descending the front stairway of the project on an errand for her employer, she fell down the steps landing on the small of her back. The plaintiff testified that after having stepped down a couple of steps the ball of her right foot was on the tread and a portion of her toe extended onto the metal nosing of the stair, and that as she reached for the next step with her left foot, both her feet slipped out from under her and she fell. She testified that the metal nosing on the stairs was "worn and they were smooth, shiny, slippery," and that there was no paint on the metal nosing in the walking area. Several of plaintiff's witnesses corroborated her testimony that the metal nosing was "slippery" and "unpainted." Plaintiff, however, was the only witness to her fall. Neither the complaint nor the plaintiff's witnesses alleged or indicated any defect in the stairs other than the slippery nature of the one-half-inch metal nosing.

Aside from the testimony of the plaintiff and other witnesses that the one-half-inch metal nosing was

"slippery" and "unpainted," the plaintiff relied wholly on the testimony of William Harold Bishop, a witness produced as an expert, to establish defendant's negligence. Bishop has been in the business of designing, erecting and maintaining buildings, particularly apartment buildings, since 1921. His school training for this field consisted of an architectural course in high school and one year at the Armour Institute, where he studied general architectural education.

On direct examination, Bishop testified that he had made an inspection of the front stairway at the Ida B. Wells housing project at the request of plaintiff's attorney; that the stairway was of steel pan construction, which means the steel frame is preformed and after being placed in position concrete is poured into the steel tread pans, and that becomes the portion walked on; that he is familiar with and has used steel pan construction stairs; that he is familiar with the customary manner of construction of steps of steel pan construction in public housing or buildings without elevators, particularly with reference to the metal nosing, in Chicago prior to 1941; that in his opinion the stairway of steel pan construction at the Ida B. Wells project was not according to the accepted architectural and engineering standards prevalent in Chicago in 1941; that his opinion is based on the fact that no precaution was taken to prevent the slippery nosings; that the paint had been worn from the one-half-inch metal nosing of the stairs in question making them shiny and slippery.

Bishop further testified that the accepted standard for public housing prior to 1941, with reference to the nosing in steel pan construction, was to use an abrasive material to prevent slipping. This opinion was based on the fact that the three other public housing projects constructed in Chicago prior to 1941 did use an abrasive material for the stair nosings. Bishop concluded his direct examination by testifying that the customary

and accepted method of maintaining the one-half-inch metal nosings on steps of steel pan construction in Chicago in 1948, the year of the accident, was to paint them to keep them from becoming slippery.

It is undisputed that there was no foreign matter on the stairs; that none of the stairs were broken, cracked, irregular, missing or loose; that no nails or strips of metal were protruding, and that the steps were not wet, icy or waxed. There was no allegation of inadequate lighting or improper handrails. It therefore appears that plaintiff based her entire case on testimony that the one-half-inch metal nosing on the concrete treads deviated from the type of nosing used in other public housing projects in the Chicago area prior to 1941, and that nothing was done to prevent the nosing from being slippery. Did this evidence present a prima facie case of negligence?

■ ■ While evidence of a deviation from customary practice is admissible and may be considered by the jury along with the other evidence in the case tending to indicate negligence, it is not, in itself, proof of negligence and cannot, standing alone, sustain a recovery. Peterson v. Feltenberger, 102 Pa. Super. 6, 156 Atl. 621. So, in the instant case, a showing that the construction of the stairs was not standard is not enough. It must be shown that the deviation from the standard resulted in an unreasonably dangerous and unsafe condition. Kelly v. Loft, Inc., 124 N. J. L. 185, 11 A.2d 58; Kahn v. Werbel, 4 N. J. Super. 184, 66 A.2d 559. There are no Illinois cases in point, but we believe the cases cited are sound in sustaining this reasoning.

Before deciding whether or not the evidence indicated that the alleged deviation resulted in a dangerous and unsafe condition, we feel that the evidence of deviation itself requires some discussion. On cross-examination the plaintiff's expert witness, Bishop, testified that the type of stairway construction and the

165

one-half-inch nosing used in the Ida B. Wells project was an accepted method of construction in the Chicago area in 1941 for elevator buildings; that this distinction is based on the fact that stairways are not often used in elevator buildings, and that stairways in elevator buildings serve primarily as an emergency means of exit; that, however, such stairs are used when people want to go up or down one or two floors.

■ It is common knowledge, and this court takes judicial notice of the fact, that the stairways in many elevator buildings, particularly large office buildings, are used as frequently and often more than the stairways in nonelevator buildings. Because of this fact we are unable to find any logical basis for the distinction that the witness Bishop contends is an accepted distinction in the trade. The existence or nonexistence of an elevator in a building has no logical relation to whether or not the stairs in that building are reasonably safe to people rightfully and properly using them.

The trial court limited the evidence of accepted stairway construction to that used in public housing in the Chicago area prior to 1941. This view unduly restricted the controlling question of the case, which is: "Were the stairs in question reasonably safe at the time of the accident?" Overemphasis of narrow and unrealistic standards can lead to absurd results. Thus in stairway construction, if we were to follow plaintiff's theory, a different standard could be applied to a theater, library, school, department store, office building, public building, factory, et cetera. These narrow standards become even narrower by differentiating between the different types of buildings when they are with or without elevators. When we consider that escalators are now used in addition to stairs and elevators, we realize the absurdity of the standard contended for by plaintiff.

The human mechanics of walking up and down stairs does not vary because of the nature of the building or

166

because there is or is not an elevator. Thus if a stairway in an elevator building, which is of the same construction as the stairway in the Ida B. Wells housing project, is reasonably safe for people to use, the natural implication is that the stairway in the Ida B. Wells housing project is also reasonably safe. It therefore appears that Bishop's admissions on cross-examination, while not disproving the standard to which he testified, did effectively establish that the deviation here involved was not one which necessarily rendered the use of the stairs unreasonably dangerous.

In Marshall Field & Co. v. LeBosky, 133 Ill. App. 316, this court said at p. 323:

"We are unaware of any authorities and none is called to our attention where it has been held that the owner or occupant of a building must provide a certain kind of stairway for use of persons desiring to go up and down, or be held guilty of negligence. It is no more negligence per se to use one of several ordinary and familiar forms of construction than others. In the use of appliances or machinery the law does not require a master to furnish for employees such appliances as are of the best character or absolutely safe, but to use reasonable and ordinary care and diligence in that respect. I. C. R. R. Co. v. Sanders, 166 Ill. 270, 278; Mattson v. Qualey Const'n Co., 90 Ill. App. 260–263. Upon like reasoning it does not appear why one owning or building a house or store should under ordinary circumstances be required to furnish stairs which shall be absolutely safe, or such as some third party may after an accident conclude might have been better."

It may be true that architects and engineers develop different standards of stairway construction for different types of buildings. Such standards, however, do not have the effect of establishing negligence or nonnegligence as a matter of law. The ultimate inquiry in each particular case is whether or not the stairway

in question was reasonably safe. Plaintiff's expert witness admitted that the type of stairway in question was a familiar, usual and accepted form of stairway construction in elevator buildings. Having decided that the presence or absence of an elevator is an irrelevant factor on the question of the reasonable safety of stairs, we find that the testimony of plaintiff's expert establishes that the type of stair nosing in question as well as abrasive nosings, was a familiar and accepted form of stairway construction in the Chicago area.

The language of the LeBosky case, supra, that it "is no more negligence per se to use one of several ordinary and familiar forms of construction than others" is clearly applicable to this situation. Bishop testified, in effect, that the use of both abrasive and nonabrasive nosings are accepted, but that in his opinion abrasive nosings are better. Such testimony could not establish a prima facie case of negligence. The question is was the stairway reasonably safe. The only testimony that goes directly to this question is that the one-half-inch metal nosing on the stairs was "smooth, shiny, slippery," and "unpainted." Was this sufficient evidence on which to submit the negligence question to the jury? In the LeBosky case, supra, the court made the following statement at p. 322:

"There are probably no stairs of whatever construction which do not call for care in their use. It is common experience that persons fall or slip on stairs where the steps are of uniform width, depth and height with straight descent, hand rails and all ordinary appliances. There is no evidence here tending to show that, properly used, steps of the construction employed in the case at bar are not as safe as others."

The court then quoted with approval the following from Larkin v. O'Neill, 119 N. Y. 221:

"The line must be drawn in these cases between suggestions and possible precautions, and evidence of

actual negligence, such as ought reasonably and properly be left to a jury. It is difficult in some cases to determine where the line is to be drawn, but here I have no hesitation in saying that there was no evidence of negligence which could properly be left to the jury. There was nothing unusual in the construction of the staircase. The use of brass for protecting the edges of stairs and absence of a hand rail, which alone are relied on by the plaintiff, are by no means unusual in staircases of a similar description where the traffic is great. They were obvious to everyone using the stairs, and were well known to the plaintiff himself."

In Walker v. F. & W. Grand 5-10-25 Cent Stores, 5 N. J. Misc. 541, 137 Atl. 563, plaintiff customer sued defendant store owner, alleging that the worn and slippery condition of the metal nosing of the steps on the stairway in the store caused her to slip and fall down the stairs. In reversing a judgment for the plaintiff the court said:

"The facts practically parallel the case of Garland v. Furst, 93 N. J. Law, 129, 107 A. 38, 5 A. L. R. 275, in which the proofs were identical, except in that case the offending instrument was a smooth, slippery floor, and in the present case it was a smooth nosing on the steps. These nosings are such as are commonly placed on stairways where large numbers of people are passing up and down. It is common knowledge that such metals become smooth when worn, but under the case cited it does not constitute negligence to permit their continued use. The tendency of a much-used substance of any sort is to become smooth, and it would be a hard rule to require that floors, stairs, steps, and similar constructions should be changed whenever use might smoothen their surfaces."

In Security Co. v. Lewis, 127 Colo. 139, the court, in reversing a judgment for plaintiff and ordering that the complaint be dismissed, said at p. 144:

169

". . . and in fact there is no complaint about the stairway, except that the leading edge or 'nose' of the steps was smooth, basic metal, and plaintiff, well aware of the condition of which she complained for a long period of time, made no complaint of the condition to the building management; and in substance, her basic complaint seems to be that paint had worn off this rounded metal edge and its smoothness was the cause of her fall. There is an inescapable inference that if plaintiff had been properly descending the stairway by placing her foot on the main portion of the step instead of the metal edge, she would not have fallen unless it was that she made a misstep."

A directed verdict for defendant was affirmed in Rosenthal v. Central Garage of Lynn, Inc., 279 Mass. 574, 181 N. E. 660, where the court said:

"The testimony of witnesses and photographs which were in evidence show that projections on the treads of the iron stairway were worn shiny and smooth, but no such condition appeared as to warrant the conclusion that the stairway was unsafe merely as the result of wear."

Judgment for defendant notwithstanding the verdict was affirmed in Stephens v. Sears Roebuck & Co., 212 F.2d 260 (CA 7th, 1954), where the court said "The testimony of plaintiffs' witnesses that the floor was 'slick,' 'shiny' or 'slippery' fails to definitely show a dangerous condition. These words of description are lacking in precision of meaning." Also see Dixon v. Hart, 344 Ill. App. 432; Shramek v. Huff, 135 Neb. 178, 280 N. W. 450; MacLachlan v. Perry, 68 F.2d 769; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, and Leach v. S. S. Kresge Co., 147 Atl. 759 (R. I.).

Plaintiff cites many cases in support of the proposition that there was sufficient evidence of negligence for this to go to the jury. Corcoran v. United Markets, Inc., 314 Mass. 26, 49 N.E.2d 250; Di Noto v. Gilchrist

Co., 125 N.E.2d 239 (Mass.); Mulloy v. Kay Jewelry Co., 289 Mass. 264, 194 N. E. 116; Paducah Dry Goods Co. v. Thompson, 308 Ky. 12, 213 S.W.2d 440, and Bennett v. Jordan Marsh Co., 216 Mass. 550, 104 N. E. 479, all involved allegations and evidence of actual and substantial wearing down of a portion of the stair. In the instant case the only evidence of wear is that the initial coat of paint on the nosings has been removed. There is no evidence that the metal nosing, itself, or any other part of the stairs had been noticeably worn.

██ We are of the opinion that the testimony to the effect that the one-half-inch metal stair nosing was "shiny" and "slippery" clearly did not establish that the stairway, if properly used, was in an unreasonably dangerous and unsafe condition. This case was tried twice in the trial court. In the first trial plaintiff's verdict was set aside on defendant's motion for new trial. We do not believe that the fragmentary evidence adduced by plaintiff to establish defendant's negligence would justify our reversing and remanding this cause for a new trial.

We conclude, therefore, that the trial court erred in denying defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence and in failing to render judgment notwithstanding the jury's verdict.

There have been two trials in this case and it is of course desirable that a final disposition should be had. If plaintiff files a petition for leave to appeal and the court should allow it and should conclude that we were in error in reversing, the final disposition would be advanced by a final determination of all questions of law now before us. Hence, while the ground on which we reverse, if sustained, would end the case, it is desirable that we pass on the other points. This appears to be the policy indicated by the provisions of section 68.1, subsection 6 of the Practice Act (Ill. Rev. Stat. 1955, ch. 110, sec. 68.1(6)) which now requires the trial

court to pass on all relief sought in all post-trial motions even though the ruling on a portion of the relief sought renders a ruling unnecessary on other relief.

The reasons heretofore stated in this opinion for reversing this cause would clearly in and of themselves be grounds for granting a new trial.

■■ The trial court admitted into evidence plaintiff's exhibits six to twelve, which were photographs of the stairs at three housing projects where abrasive or scored treadplates were used. These were offered as showing nonconformance in the instant case. However, the court refused to admit into evidence defendant's exhibits two to five for identification, which were photographs showing stairways in other buildings using the same type of stairway and nosing as in the Ida B. Wells project. We have said that evidence of deviation from the accepted standard of construction is relevant in a negligence case. Plaintiff's exhibits six to twelve were properly admitted because they corroborated the witness Bishop's testimony as to his version of the accepted standard. Defendant's exhibits two to five for identification, however, were also relevant to the issues of the case to show that the standard to which the witness Bishop testified was not the only accepted standard for stairway construction in the City of Chicago. The failure to admit these was serious error for as we heretofore stated the acceptance of such a narrow and unrealistic standard would lead to absurd results.

■■ Defendant also contends that it was error to permit the testimony of plaintiff's witness, Ardelle Buford, given at a previous trial, to be read into evidence in the trial below. At the time of the trial the witness was in the State of Georgia. The rule in Illinois is that the absence of a witness from the state is not ground for admitting his testimony, given at a former trial, unless it is shown that neither the pres-

ence nor the deposition of such witness could have been procured by the use of reasonable diligence. Stephens v. Hoffman, 275 Ill. 497; Devine v. Chicago City R. Co., 182 Ill. App. 366. The plaintiff knew in January that the witness was in Georgia and was expected back on February 15. The trial commenced on February 7. The record reveals that the plaintiff made no attempt whatsoever to procure the deposition of the witness during the interim period. She made no motion to have the cause continued until the witness returned. She did no more to procure the witness's presence than to attempt to serve process on the witness at her Chicago residence when she knew the witness was in Georgia. Reasonable diligence was not shown and thus the reading of this former testimony was error.

Defendant further contends that the verdict is excessive and reflects passion and prejudice engendered by the arguments to the jury by plaintiff's counsel and the trial court's ruling on the evidence. An examination of the evidence as to the injuries sustained, the permanency thereof, and the expenses incurred by the plaintiff leads us to the conclusion that the verdict was not excessive. We see no basis for the criticism of plaintiff's argument to the jury.

Other errors are assigned by the defendant in its motion for new trial. We have examined them and find that they are either without merit or would be cured on a new trial as a result of our decision on the principal contentions.

For the reasons heretofore stated the judgment of the trial court is reversed.

Judgment reversed.

McCORMICK, P. J. and SCHWARTZ, J., concur.