Fay Lubin, Plaintiff-Appellee, v. Goldblatt Bros., Inc., a Corporation, Defendant-Appellant.

Gen. No. 48,476.

First District, First Division.

October 29, 1962.

Rehearing denied November 15, 1962.

Lord, Bissell & Brook, of Chicago (Forrest L. Tozer and Richard E. Mueller, of counsel), for appellant.

Young & Hickey, of Chicago (Vincent M. Clark, Burton H. Young and Lawrence P. Hickey, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an action commenced by plaintiff, Fay Lubin, to recover damages for injuries sustained by her when she fell in defendant's premises. After a trial before the court without a jury, judgment was entered for plaintiff in the amount of $40,000 and defendant appeals.

Defendant contends the finding of negligence against it is contrary to the law and to the evidence and that plaintiff failed to prove she exercised reasonable care for her own safety. Alternatively, defendant contends that if the verdict is affirmed, the amount of damages should be reduced as grossly excessive.

From the testimony it appears that on July 11, 1960, the plaintiff, then about seventy years of age, was about to leave defendant's store when she slipped and fell in the foyer between some sales counters and the revolving exit door. The accident occurred between 12:30 and 2:00 o'clock p. m., a short time after the store was opened for business. Plaintiff testified she was familiar with the store and said this was her customary place of going in and out. She stated that the slippery condition of the floor was the cause of her fall.

There were no eyewitnesses to the occurrence. Ronald Kerman, employed by defendant, heard some-

■■■■■■■■■■■■

one cry out and was the first person to reach the scene. He found plaintiff on the floor in the foyer inside the Broadway entrance directly in front of the revolving door. When plaintiff told him she could not get up he called Mrs. Jean Ross in Personnel and the latter called Charles W. Baker, the store supervisor. The plaintiff complained of an injury to her leg. After a phone call, the fire department personnel and two policemen arrived. Plaintiff was placed in a wheel chair and then taken to Weiss Memorial Hospital.

With respect to the condition of the floor in the area where plaintiff fell, the evidence showed that the floor was composed of asphalt tile, was clean except for buffing marks, and there was no dirt, debris, or foreign material present. It had been swept the night before with an oil cloth mop and buffed with a fiber pad on the morning of the occurrence. The standing maintenance care consisted of waxing the floor about every two months. The porter in charge of waxing the floor could not recall the last time it had been waxed prior to the accident.

At the point where plaintiff fell, the floor sloped from a distance of one foot from the nearest counter, which was less than six feet from the revolving door, and extended to the center of the revolving door. The slope measured ⅝ths of an inch per foot. This converts to a three degree slope.

The amended complaint charged the defendant with the following acts of negligence:

(1) Permitting the floor of the store to be waxed and polished and in a slippery condition;

(2) Failing to warn the plaintiff that the floor was in a slippery and dangerous condition;

(3) Applying wax to the floor at a point where there was a substantial grade in the level of the floor as a result of which the floor at the point

where the grade was located became extremely slippery; and

(4) Permitting the floor to be in a dangerous and slippery condition at a point where there was a substantial grade or change in level of the floor which grade or change in level was unexpected and not readily visible.

The answer denied all charges of negligence and affirmatively alleged that the floor was surfaced with the type of flooring customarily used in department stores and that the flooring was cleaned and dressed in the customary manner. The plaintiff's reply was a general denial of the affirmative allegations. The case was tried without a jury and the trial judge found in favor of the defendant, Broadland Building Corporation, the owner of the building, and against the defendant, Goldblatt Bros., Inc., the lessee. The damages were assessed at $40,000.

█ █ Defendant maintains there is no evidence whatsoever of any negligence by the defendant in its floor and maintenance procedures. A court of review will consider the evidence taken in the light most favorable to the plaintiff inasmuch as a reviewing court is not authorized to disturb the findings of the trial judge unless the judgment is against the manifest weight of the evidence and an opposite conclusion is clearly evident. Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347.

█ █ We agree with defendant that a storekeeper who conducts a business to which the public is invited is not the insurer of his customer's safety. Liability must be founded on fault. Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443. Also, a storekeeper may wax his floors in the customary manner without incurring liability unless he is shown to have been negligent in the materials he uses or in the manner of applying them. Smith v. Pioneer

Trust & Sav. Bank, 13 Ill App2d 424, 142 NE2d 181 (Abstr); Dixon v. Hart, 344 Ill App 432, 101 NE2d 282.

Defendant contends that evidence to the effect that the floor was "slick," "slippery," "buffed," and "shiny" does not establish that the defendant was negligent or that a dangerous condition existed. Many decisions supporting this contention have been called to our attention, including the following: Turner v. Chicago Housing Authority, 11 Ill App2d 160, 136 NE 2d 543; Dixon v. Hart, 344 Ill App 432, 101 NE2d 282; Scoville v. Smith Bldg. Co., 334 Ill App 262, 78 NE2d 858; Stephens v. Sears Roebuck & Co., 212 F2d 260 and Elias v. Hiller, 201 NYS2d 382. But in none of these cases are the facts or surrounding circumstances similar to those found in the case at bar.

In Turner the construction and maintenance of a stairway were involved. There the plaintiff testified that the "metal nosing on the stairs was worn and they were smooth, shiny, slippery . . ." The Appellate Court, in holding that it was error to deny a directed verdict, stated that "the testimony to the effect that the one-half inch metal stair nosing was 'shiny' and 'slippery' clearly did not establish that the stairway, if properly used, was in an unreasonably dangerous and unsafe condition," and pointed out that there was no evidence that the metal nosing itself, or any part of the stairs had been noticeably worn. In Dixon and Scoville the alleged negligence consisted solely of the plaintiff's testimony that the floor was slick. The Court said, in Dixon, that "in Illinois . . . as a general proposition the mere treating of a floor with a substance that gives it a polished surface is not negligence per se." 344 Ill App at p 435. In Stephens recovery was sought for a fall allegedly caused when plaintiff hit a greasy or slick spot. The Circuit Court of Appeals held plaintiff failed to establish a dangerous condition since there was no description by her or anyone else as to the appearance of the alleged spot.

In Elias, the New York Court said "[t]he fact that a floor is slippery by reason of its smoothness or being 'highly polished' does not give rise to a cause of action, absent competent proof of negligent application of the wax or polish." 201 NYS2d at p 383.

None of the above cited cases involved a floor that sloped 3 degrees and upon which an oil cloth mop was used to clean it on the morning of the occurrence. In Dixon v. Hart, 344 Ill App 432, 101 NE2d 282, the court enumerated some of the positive acts of negligence which would justify recovery. Among those mentioned was the application of wax to a floor with a substantial incline. 344 Ill App at p 435.

In the instant case, a lieutenant of the fire department testified that he came to the store in response to a call and found plaintiff in a wheel chair and that in examining the floor where he was told the fall occurred, he testified, "I ran my foot over it. I noticed that it was slippery due to recent cleaning." Another fireman testified he examined the flooring in the aisles in addition to the floor on the slope where Mrs. Lubin fell. He found the entire area to be uniformly highly buffed and slippery. Further, a police patrolman who arrived at the scene made an examination of the floor and found it to be smooth and slippery.

In a well reasoned opinion, which we think involved the same factual question before this court, the Circuit Court of Appeals, in Burg v. Great Atlantic & Pacific Tea Company, 256 F2d 613 (CA 7, 1958), reversed an order of the District Court directing a verdict for defendant. The court said:

> Admittedly, the waxing of floors is too common a practice to constitute negligence in the absence of evidence tending to show some positive negligent act or omission. In the instant case the wax was applied to asphalt tile *on an incline*. The trial court discounted the incline as being too slight, admitting that if the slope had been steeper it

might have constituted actionable negligence to wax its surface. Such a determination, that is, whether a three-degree incline is so substantial that an application of wax on its surface evidences a lack of reasonable care on the part of the store owner, is, however, a factual determination which should be left to the jury. 256 F2d at p 615.

Thus the Burg case does not hold that applying wax to an incline was negligence per se, but does hold as we do here, that this was a question of fact to be determined by the trier of facts. The facts here support a finding of negligence. The incline was immediately in front of the revolving exit door, an area where a customer would normally be looking at the door rather than watching her feet. The flooring on the incline was the same color as the flooring elsewhere. It was treated in the same manner as the flooring elsewhere, waxed, mopped and buffed. The trial court's opinion was to the effect that the evidence showed that defendant's negligent manner in the maintenance and care of the sloping floor was the proximate cause of plaintiff's fall. It is true, as defendant argues, that since the testimony of plaintiff was produced by evidence deposition, the trial judge was in no better position than we are to pass on her credibility. However, the determining testimony regarding the condition of the floor where plaintiff fell, as indicated by defendant's employees, was given by other witnesses. The trial judge was therefore in a better position to observe the conduct of those witnesses and to weigh the evidence and determine the preponderance thereof. Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205.

██ On the question of whether the plaintiff was exercising reasonable care for her own safety, it is our conclusion, after considering the evidence that the trial court properly held that plaintiff was walking in a reasonable manner toward the exit door. No precise

law can be laid down on this subject, but each case must be determined upon its own facts. Schiff v. Oak Park Cleaners & Dyers, Inc., 9 Ill App2d 1, 132 NE2d 416; Stack v. East St. Louis & S. R. Co., 245 Ill 308, 92 NE 241; Sims v. Chicago Transit Authority, 4 Ill2d 60.

The evidence shows that plaintiff could not have known by any observation on her part that the sloping floor was slippery and dangerous. She had a right to assume that the floor was reasonably safe. There was nothing to give her any warning to the contrary. As we indicated before, the normal behavior of a person approaching the revolving door would be to keep one's eyes on the door. Under the circumstances, in the case at bar, the plaintiff did not have to exercise the same or an equal degree of care as would be required of a pedestrian upon the street.

There remains the contention that the award of $40,000 was grossly excessive. Defendant concedes that as a result of the fall the plaintiff sustained a fractured hip and while in the hospital, after surgery, complications occurred consisting of congestive heart failure plus kidney failure which caused uremic poisoning. The plaintiff was then seventy years of age and as defendant points out, "whether these complications would have arisen if the fall had not occurred cannot, of course, be definitely determined." However, Dr. Handelman, her treating physician, testified that the development of these infections might have been causally related to the trauma. Her hospital bill was $3,640.05 and the total doctor bills were $3,500. After leaving the hospital she was confined to a wheel chair and was placed in the Rest Haven home where the charges were $20 a day. At the time of the trial she was unable to walk, was confined to a wheel chair, her mind was clouded and she developed an amnesia. Dr. Handelman further testified that her condition was permanent and would require medical supervision until the end of her life.

445

Defendant argues, that in view of the fact that plaintiff was seventy years of age, had been hospitalized a year prior to the occurrence when she admitted her complaints were confusion, dizziness, backaches, high blood pressure and pain in the right shoulder and ribs radiating in the right hip, it could not be established that the damages were reasonably certain to have resulted from the injuries sustained in the instant claim. Also defendant argues that an award of $40,000 for a woman seventy years of age, in failing health, with a nine and one-half years life expectancy, was grossly excessive.

In reviewing the record we must assume that the trial judge considered all of the evidence before making the award. The reviewing courts are reluctant to disturb a finding by a trial judge on the issue of damages, and in the absence of some error of law will not do so unless the amount is so excessive as to show prejudice or passion. Mueth v. Jaska, 302 Ill App 289, 23 NE2d 805. In Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733, the Appellate Court held that an award of $38,000 was not excessive for a seventy year old man where as a result of his injuries, he became mentally incompetent and physically helpless. We cannot say, from the record, that the award in the instant case was excessive and motivated by passion or prejudice.

For the reasons indicated the judgment entered by the court is affirmed.

Judgment affirmed.

MURPHY, J., concurs.

ENGLISH, J., dissenting:
As conceded in the majority opinion, the authorities amply support the propositions that a storekeeper is not an insurer of its customer's safety; that liability

exists, in a case of this kind, only for proven negligence; that maintaining a floor in a slick or slippery condition by treatment with wax or oil does not, in itself, constitute negligence. (Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 476, 173 NE2d 443 (1961); Dixon v. Hart, 344 Ill App 432, 436, 101 NE2d 282 (1951).)

Yet the majority appear to find evidence of negligence in the testimony of the firemen and policeman to the effect that the floor was smooth and slippery. Plaintiff also testified in her deposition: "What caused me to fall was: slippery." This is not enough. There was evidence in Dixon that the floor was slick, polished and slippery. See also Custer v. St. Clair Country Club, 349 Ill App 316, 110 NE2d 697 (1953), in which the court reapplied the principle of the Dixon decision.

Nor does the maintenance of a floor on a 3° grade constitute negligence per se. While this proposition has not been the subject of a decision in Illinois, it is so eminently reasonable and practical that I don't consider it debatable. The alternative in the maintenance of store floors (few of which are completely level) would be the construction of very small steps here and there which would obviously be far more dangerous. In other jurisdictions it has been specifically held that a floor grade such as in the case at bar is not evidence of negligence. (Miller v. Gimbel Bros., 262 NY 107, 186 NE 410 (1933); Guercio v. New York Lerner Co., 63 NYS2d 664, 273 App Div 782, 816 (1946); Dolan v. Bry Block Mercantile Co., 23 Tenn App 47, 126 SW2d 376 (1938); Mullen v. Sensenbrenner Mercantile Co., 260 SW 982 (Mo 1924).)

In the New York cases, verdicts and judgments for the plaintiffs were reversed even though it was conceded that the evidence had established the existence of floors which were both slippery and sloping. The court in the Guercio case stated:

"Liability, if any, must be founded solely upon the slippery, sloping floor. Giving plaintiff the benefit of all favorable inferences deducible from the evidence, the facts shown are insufficient to establish actionable negligence. The verdict cannot be sustained on the evidence" 63 NYS2d 664, 666.

I grant that the opinion in Burg v. Great Atlantic & Pacific Tea Co., 256 F2d 613 (7th Cir, 1958), presents argument in favor of the majority's decision in this case. It admits that neither the waxing of a floor nor (inferentially) the maintenance of a 3° slope would, alone, constitute evidence of negligence, but holds that the two together would be sufficient to support a verdict. The Burg decision thus goes beyond the previously declared Illinois law. However logical the Burg supposition might seem to be as an abstract proposition, it must, of course, be applied only to a factual situation in which a reasonably careful person could foresee that the waxing of the inclined floor area would make it measurably more slippery than the same floor without wax and, thus, so dangerous as to render the waxing an act of negligence.*

This principle is not applicable to the case at bar, because here there is no room for a supposition that the slightly inclined floor in this particular case might be measurably more slippery waxed than unwaxed. We have the uncontroverted testimony of a highly qualified witness (a Professor at Illinois Institute of Technology and head of its mechanical engineering laboratory) that he made tests of the inclined asphalt-tiled floor in the precise area where plaintiff fell, and found that its coefficient of friction (slipperiness) was the

---

* In considering the significance of an incline of 3°, it should be borne in mind that this deviation from level is only that represented by the difference between a hand of a watch pointed at 15 minutes after the hour and one pointed at 15½ minutes after the hour.

same waxed and unwaxed. In other words, a person walking on this particular inclined floor was no more likely to fall *on account of its slipperiness* when it was waxed than when it was not.

My conclusion is, therefore, this: Since a leading scientist, qualified in the particular field of testing, could find no perceptible difference in the slipperiness of the waxed floor with relation to the same floor unwaxed, then the law should not impose a duty on a "reasonably careful" storekeeper to perceive such a difference, or suffer the consequences of negligence. This amounts, in my opinion, to the imposition of liability without fault.

I also believe that plaintiff failed to introduce any evidence to establish due care on her own part. It is incontrovertible that plaintiff had this burden, and neither the fact of her walking through the store, nor the fact of her fall is sufficient to satisfy this requirement. (McKinney v. Illinois Power Company, 26 Ill App2d 193, 202, 167 NE2d 249 (1960); Rohr v. Cluver, 20 Ill App2d 548, 552, 156 NE2d 770 (1959); Burns v. Chicago & A. R. Co., 223 Ill App 439, 444 (1921); Tuohey v. Yellow Cab Co., 33 Ill App2d 180, 180 NE2d 691 (1962).) Very recently the principle was well stated by Mr. Justice Crow in Overman v. Illinois Cent. R. Co., 34 Ill App2d 30, 42, 180 NE2d 213 (1962):

> "The claim that care and caution by any person has been exercised cannot be sustained when the known facts disclose that ordinary care would have avoided the accident. There must be some evidence tending to prove due care by the decedent. The burden is on the plaintiff. *Due care cannot be presumed from the mere fact of the happening of an accident and a consideration of the human instinct of self-preservation. Liability cannot rest upon imagination, speculation, or conjecture,* nor upon a choice between two views, equally compatible with the evidence, *but must be*

449

*based upon facts established by evidence fairly tending to prove them.* If the record is without evidence of due care by the decedent, the decedent was necessarily guilty of contributory negligence as a matter of law and the Court should instruct the jury to render a verdict for the defendant: (citing cases)." [Emphasis supplied.]

The only evidence which might be construed as touching on the plaintiff's exercise of care for her own safety came from her own deposition and the testimony of a friend, Mrs. Kelly. Plaintiff testified in her deposition:

"I was in Goldblatt's and was just going to walk out, and I slipped and fell and here I am.

"I walked right by the door. . . . I ought to know this department because that is my way of walking in and walking out when I go to Goldblatt's. I fell right there by the door.

"What caused me to fall was: slippery.

"I never had an accident before this accident. I never made a claim for personal injuries. Of course, sometimes it is slippery and you fall and you get over it the next day and you are back again. But an accident I never had. I never made a claim for one."

Mrs. Kelly testified:

"Mrs. Lubin never walked fast since I knew her. . . . Mrs. Lubin never took more than three or four steps at a time even on a straight walk. Mrs. Lubin never walked fast and walked a long ways at a time."

This is the same Mrs. Kelly who also testified that in the Spring before the occurrence of July 11, plaintiff fainted or "blacked out" while crossing Sheridan

450

Road in the middle of the block; that a week before the occurrence in question Mrs. Kelly and Mr. Murphy assisted plaintiff by the arm, taking 10–15 minutes to get her from the back yard to her room on the second floor; that on that day and on other occasions plaintiff told of having dizzy spells, black outs and headaches.

Under all the circumstances in evidence, I believe there is nothing to negative contributory negligence. And certainly there is nothing in the record on which to base the majority's repeated conjecture that plaintiff was keeping her eyes on the door. This is precisely the kind of speculation necessary to fill the void in the evidence as to plaintiff's own conduct, and precisely the kind of speculation which we are not permitted to make.

I believe the judgment should be reversed.