Patricia Waugh, as Administrator of the Estate of
Earl B. McCloskey, Deceased, Plaintiff-Appellant,
v. Eldon Cender and Evelyn P. McCloskey, De-
fendants-Appellees.

Gen. No. 10,292.

Third District.

January 26, 1961.

Rehearing denied and opinion modified May 2, 1961.

John Alan Appleman, of Urbana, for appellant.

Barth, Phillips, Phebus & Tummelson, of Urbana, for appellees.

ROETH, JUSTICE.

This is a wrongful death action in which a jury by a separate verdict found each defendant not guilty. The original complaint consisted of three counts. Count 1 alleged that defendant Eldon Cender was guilty of negligence in the operation of his automobile, as a result of which the automobile struck the deceased while he was lying unconscious and helpless on the highway. This count alleges due care on the part of the deceased. Count 2, also against defendant Cender, alleges that the deceased was lying on the highway in a helpless condition and unable to care for himself or exercise care for his own safety; that as defendant

approached the deceased in such condition, he, defendant, was under a duty under humanitarian principles to avoid further injury to the deceased; that defendant had the last clear chance of avoiding further injury to deceased; that notwithstanding his duty aforesaid he negligently struck the deceased and fatally injured him. This count omits any allegation of due care on the part of deceased. Count 3 is brought under the Guest Act against defendant Evelyn McCloskey and contains the usual allegations predicated upon the allegation that the deceased was a guest passenger in a car being driven by Evelyn McCloskey. The trial court struck count 2 of the complaint. The cause proceeded to trial on counts 1 and 3.

The events out of which this suit arose are unusual and require some detailing of the facts as disclosed by the record. On the early morning of September 16, 1955, an automobile was proceeding north on State Route 47 toward Gibson City, Illinois. This car was being operated by defendant Evelyn McCloskey. Her husband was riding in the front seat beside her and their 13 year old daughter, Juanita, was asleep on the rear seat. It was still dark with the sky beginning to light up. As they travelled along they encountered spotty areas of fog. Evelyn McCloskey drove the automobile at from 50 to 55 miles per hour and as she approached and entered these foggy areas she slowed down. As she approached the area where the occurrence in question happened, the fog was dense and she noticed what she thought was the top of a large cattle truck as it appeared above the fog area outlined against the sky. Seeing this object, she slowed down and began to edge over to the left or west side of the highway to avoid a collision. The object which Evelyn McCloskey judged to be a cattle truck was in fact a bridge, with steel girders and trusses projecting up from and over the floor of the bridge. This bridge was

411

105 feet long with approaches on both ends of from 25 to 30 feet in length. As she edged to the left her husband cautioned her to look out, whereupon she applied her brakes and the car struck the southwest corner of the steel portion of the bridge. The impact threw both Evelyn McCloskey and her husband out of the automobile and woke up the daughter, Juanita. Juanita then got out of the automobile, came to the rear thereof and found her mother and father lying on the pavement. Both appeared to be unconscious, were moaning and groaning but alive, and there was no blood around her father at that time. Juanita placed the position of the automobile after it stopped to the south of the middle part of the bridge and toward the west side of the highway. She placed the position of the bodies of her father and mother as being to the rear of the automobile and at the south end of the bridge near the center of the highway. Her father was lying closer to the center line of the highway than to the west edge of the bridge.

As Juanita viewed the above scene she could see a light in a house to the southwest and she ran to this house for help. The lane leading into this house was 200 feet from the south edge of the bridge. While at the door of this house she saw a car on the highway proceeding north toward the bridge. She testified this automobile was going fast and that just after it passed the house there was a big flash. She then ran back to the bridge and met her mother coming toward her. Evelyn McCloskey proved to be in a state of shock and was removed to the hospital. At the time of the trial she had no recollection of any of the events from the time her automobile struck the bridge until her recovery in the hospital.

As other persons came up to the scene it was discovered that the McCloskey automobile was north of

the bridge on the north approach, headed east and west with the front end at about the center line of the highway and the rear off on the west shoulder. Both the front and rear of the automobile were extensively damaged and it was on fire. Beyond the McCloskey automobile and to the north of it, over an embankment and in a ditch on the west side of the highway, was a second automobile, which later proved to be the automobile being driven by the defendant Cender. It was extensively damaged on the front end. Further examination of the bridge disclosed that the body of Earl McCloskey was lying just south of the middle part of the bridge on the west side thereof with the head about 6 inches from a curbing on the west side of the floor of the bridge and the feet extended to the east. He was lying in a pool of blood and was deceased.

The defendant Eldon Cender testified both under Sec. 60 of the Practice Act when called by plaintiff and on his own behalf upon presentation of his defense. From his testimony it appears that he and his wife had left their home about 11 miles to the south on the morning in question. They drove north on Route 47 and encountered the spotty areas of fog. Cender was familiar with the highway and the location of the bridge, having traversed it from 50 to 75 times previously. He was driving at a speed of 55 to 60 miles per hour as he approached the bridge and noticed the blanket of fog over the bridge as it loomed up in his headlights. The foggy area extended out from the bridge proper on to the approach and was thick. The center line of the highway was not discernible. He said he could not see through it or into it. As he drove into the fog he did not decrease his speed. Shortly after entering the blanket of fog he saw the bridge and then at about the same time as he saw the bridge he saw an object with which his car collided. He had no

413

recollection of applying his brakes or swerving his automobile before the impact. Cender was rendered unconscious upon the impact.

The foregoing covers the testimony of the principals involved in this cause pertaining to the basic issues and is for the most part undisputed. Other persons who came upon the scene after the occurrence testified to such matters as weather conditions, distances, location of the body, location of the cars, etc., which for the most part corroborate our detailed analysis of the facts aforesaid. We do not find it necessary to detail this testimony witness by witness.

No post trial motion was filed by plaintiff as to the defendant Evelyn McCloskey and this appeal is not prosecuted against said defendant. We are therefore concerned only with errors relied upon for reversal as to defendant Cender, and counsel for plaintiff assigns a number of such alleged errors.

 In order to establish plaintiff's cause of action against the defendant Cender as alleged in Count 1 of the complaint, it was incumbent on the plaintiff to prove the fact as alleged, that defendant Cender's automobile "struck" the deceased. Toward this end, plaintiff's counsel introduced proof of circumstances hereinbefore detailed, from which, in our opinion, the jury could reasonably find this fact. In other words, proof of these circumstances was sufficient prima facie to submit this question to a jury. *In addition* plaintiff called and examined defendant Cender under Sec. 60 of the Civil Practice Act. During the course of the examination the following questions were asked and answers given:

"Q. Now, you did drive into this fog? Is that correct?

A. Yes.

Q. And you did strike Mr. McCloskey and the rear end of the McCloskey car, didn't you?

414

A. I didn't know at this time.

Q. You do know it now, don't you?

A. Yes."

We are of the opinion that the foregoing testimony constituted an unequivocal admission by defendant Cender that his automobile struck the deceased. It therefore comes within the purview of a judicial admission as the same is discussed in Huber v. Black & White Cab Co., 18 Ill.App.2d 186, 151 N.E.2d 641, and Leisenring v. E. Herlan Lumber Co., 18 Ill.App.2d 610, 152 N.E.2d 892. Counsel for defendant insist that a reading of all of the testimony of the defendant Cender will demonstrate that he made a reasonable explanation of this admission. We are not unmindful of the rule that a determination of the question of whether a person has made a binding judicial admission depends upon an evaluation of all of his testimony, and not just a part of it. We have carefully read all Cender's testimony as it appears in the original record. We are impressed with the fact that the most that can be said of his testimony is, that he was not conscious or aware *at the time of the occurrence,* of his automobile striking the deceased. But this does not lessen the effect of his testimony as a judicial admission. It is not necessary that he have personal knowledge of the fact *at the time of the occurrence* in order to make an admission of the truth of the fact binding upon himself. The reason for this rule is that when a person speaks against his own interest it is to be supposed that he has made an adequate investigation. Haskell v. Siegmund, 28 Ill.App.2d 1, 170 N.E.2d 393.

■ The effect of the foregoing is important to a decision of the case before us. It appears from the record that the trial judge, at the request of counsel for defendant Cender, propounded to the jury a special interrogatory as follows:

415

"Did the automobile driven by the defendant, Eldon Cender, strike the plaintiff's decedent, Earl B. McCloskey, at the time of the occurrence in this case?"

Thus the jury was given the option of a "yes" or "no" answer to this question despite the admission of defendant Cender that his automobile did strike the deceased. The jury was therefore called upon to answer a question either in the affirmative or negative about which there was no dispute. If it answered the question in the negative, as it did, it would necessarily follow under the state of the pleadings in this case, that it must find the defendant Cender not guilty. It would seem apparent that this interrogatory should not have been given under the record before us. We therefore deem it error to have submitted this interrogatory to the jury.

█ Error is also assigned to the admission of certain testimony of the witness Rose Cender, who was called as a witness for defendant Cender. She was the wife of defendant and in the car with him at the time of the occurrence. She was rendered unconscious in the collision and apparently did not regain consciousness until after being in the hospital. Initially she testified that she did not remember anything from a point a mile or two south of the bridge until she regained consciousness after the occurrence. Over objection of counsel for plaintiff she was permitted to testify that she was injured and to detail the nature and extent of her injuries, notwithstanding an offer by counsel for plaintiff, coupled with his objection, to stipulate that her loss of memory was genuine and caused by the collision.

A comparable situation arose in the case of Minga v. Jack Cole Co., Inc., 12 Ill.App.2d 556, 140 N.E.2d 383, wherein it was held to be error to permit such testimony. The court there said:

416

"There was no issue before the court which this testimony could in any way tend to prove. It was entirely immaterial, and the description of the injuries suffered by the defendant McGuire could have awakened the sympathy of the jury and so was prejudicial."

We are of the opinion that the description of the injuries suffered by Rose Cender was improper and was therefore prejudicial to plaintiff.

■ Error is also assigned on the trial court's action in sustaining defendant's motion to strike count 2. We have examined the record and find that the only order entered by the trial court was to the effect that the motion to strike was allowed and count 2 was stricken. This in our opinion is not a final order and does not preserve anything for review. Johnson v. City of Rockford, 26 Ill. App.2d 133, 169 N.E.2d 534.

Finally counsel for plaintiff assigns as error the giving of defendant Cender's instruction #12. This instruction is as follows:

"The Court instructs the jury as to Count I of the complaint in this case that contributory negligence on the part of the plaintiff's decedent is a failure by the said plaintiff's decedent to use reasonable care and caution for his own safety just before and at the time of the occurrence in question, which failure proximately contributed to cause the injuries and death complained of.

"You are further instructed that contributory negligence on the part of Evelyn P. McCloskey is a failure by the said Evelyn P. McCloskey to use reasonable care and caution for the safety of Earl B. McCloskey just before and at the time of the occurrence in question, which failure proximately contributed to cause the injuries and death complained of."

■ Courts of review have frequently stated that the function of instructions is to advise the jury of the pertinent law in language appropriate for its immediate application to the case, and the test is not what meaning counsel can at leisure attribute to them but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions considered as a series (Reivitz v. Chicago Rapid Transit Co., 327 Ill. 207, 213; 158 N.E. 380).

■ The instruction complained of is not peremptory in character. It merely defines what constitutes contributory negligence on the part of the deceased and Evelyn P. McCloskey. As to the latter individual, it was particularly proper since by another instruction the jury was told that they could not award compensation with reference to the pecuniary injuries suffered by Evelyn P. McCloskey if she were guilty of contributory negligence.

For the foregoing reasons it is our opinion that a new trial should have been granted by the trial court. Accordingly the judgment of the Circuit Court of Champaign County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CARROLL, PRESIDING JUSTICE, and REYNOLDS, JUSTICE, concur.