## Miodrag Vasic, Appellant, v. Chicago Transit Authority, a Municipal Corporation, Appellee.

### Gen. No. 48,047.

First District, Third Division.

October 25, 1961.

11a

11b

Mayster & Melamed and Leo S. Karlin and Daniel Karlin, of Chicago (Leo S. Karlin and Alan D. Katz, of counsel), for appellant.

William J. Lynch, William S. Allen, Michael A. Gerrard, and John W. Freels, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

An action was brought in the Circuit Court of Cook County by Miodrag Vasic (hereafter referred to as the plaintiff) against Chicago Transit Authority (hereafter referred to as the defendant) to recover for personal injuries sustained by the plaintiff when he came into contact with a bus owned by the defendant and driven by its agent at the intersection of Adams Street and State Street in Chicago, Illinois. The plaintiff, a pedestrian, was walking in a southerly direction over Adams Street. The bus, which had been proceeding south on State Street, was making a right turn into Adams Street so as to proceed in a westerly direction

on Adams Street. The jury rendered a verdict of not guilty on behalf of the defendant. Judgment was entered on the verdict and the court overruled a post-trial motion filed by the plaintiff asking for a new trial. This appeal is taken from the judgment and order of the court.

■ ■ In the case before us the plaintiff moved for a new trial on the ground that the verdict was against the manifest weight of the evidence. In Read v. Cummings, 324 Ill App 607, 59 NE2d 325, the court distinguishes between the function of a trial court in setting aside a verdict because it is against the weight of the evidence and the function of a reviewing court in setting aside a verdict because it is against the manifest weight of the evidence, where a motion is made in the trial court asking for a new trial because the verdict is against the weight of the evidence, and the court says:

> "It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into consideration the fact that the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. This court in passing on the question must take into consideration not only the verdict of the jury but the fact that the trial judge saw and heard the witnesses, overruled the motion for a new trial and entered judgment. It requires much more for this court to set aside a verdict and judgment than is required of the trial judge. . . . the question

11d

of the preponderance of the evidence does not arise at all in this court. (Valant v. Metropolitan Life Ins. Co., 302 Ill App 196; Sears, Roebuck & Co. v. Mears-Slayton Lumber Co., 226 Ill App 287–290.) . . ."

■ ■ A court of review in passing on the question of whether the verdict is against the manifest weight of the evidence must take into consideration not only the verdict of the jury but the fact that the trial judge also saw and heard the witnesses, heard arguments of counsel, and then denied the motion for new trial. Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635. In order for the court to determine that the verdict is against the manifest weight of the evidence an opposite conclusion must be clearly evident or the jury's verdict palpably erroneous and wholly unwarranted from the manifest weight of the evidence. Benkowsky v. Chicago Transit Authority, 28 Ill App2d 257, 171 NE2d 416. A verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable. Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836. In Devine v. Delano, 272 Ill 166, 180, 111 NE 742, 748, the court says:

"A greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts. (1 Greenleaf on Evidence,—16th ed—sec 1; Commonwealth v. Webster, 5 Cush 295; 11 Am & Eng Ency of Law,—2d ed—490.)"

■ ■ In Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74, the court says:

"Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is

11e

recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue."

▇ In this State in a jury trial in an action involving damages to person or property caused by the negligence of a driver of a vehicle, known at common law as an action on the case, the duty is imposed upon the plaintiff to prove by a preponderance or greater weight of the evidence that the defendant was negligent and that his negligence was a proximate cause of the resulting injury, and it is equally his duty to prove by a preponderance or greater weight of the evidence either that the plaintiff was not guilty of any negligence or, if there were some negligence on the part of the plaintiff, that such negligence was not a proximate cause of the injury.

In the instant case the occurrence was at the intersection of State and Adams Streets. State Street is a thoroughfare running north and south and is intersected by Adams Street running east and west. On State Street both north and south traffic is permissible. On Adams traffic can only move west. The intersection is controlled by traffic lights. The plaintiff was crossing the intersection on the west side of State Street walking south in the space properly reserved

11f

for pedestrians. The light was green for north and south traffic at the time he commenced to cross the street. For north and south traffic the lights would remain green for 36 seconds, with three seconds of amber during the last three seconds of green. Then would follow a red light for 29 seconds; during the last three seconds of the 29 the amber light would also be on. The intersection was well lighted. At the intersection State Street was 59 feet 7 inches from curb to curb. Adams Street was 37 feet 8 inches from curb to curb west of State Street. The north sidewalk of Adams Street was 14 feet wide.

The defendant through its agent was operating a passenger bus, which was 35 feet long and 7 or 8 feet wide. It was proceeding south on State Street and the intention was to make a right turn into Adams Street and proceed west. It was approximately six-o'clock in the evening and there was a light drizzling rain. The bus was equipped with windshield wipers and the visibility of the driver of the bus was not obscured. There is a sharp conflict in the evidence as to the portion of the bus which came in contact with the plaintiff and as to how the accident occurred.

The plaintiff testified in his own behalf that when he reached the northwest corner of Adams and State the light for State Street changed from green to red; that he then proceeded to cross Adams Street; that he looked to the left and saw no one going west, nor did he see any bus standing on State Street north of the corner when he turned and was facing in an easterly direction; and that he was the first person crossing from north to south. He did not again look to the left. He also testified that when he was about three-fourths of the way across he saw light from the left side of him and the right front corner of the bus hit him.

11g

A police officer testified that he saw the bus after the accident, the back end being on the east end of the crosswalk on the west side of the street; that the front of the bus was in the lane near the south curb; that on the righthand side of the bus the plaintiff was lying on the street at the west end of the crosswalk, probably a foot or two west of the west line of the crosswalk; that he was about 17 or 18 feet from the north curb of the street, perhaps three feet north of the center line of Adams; and that he was near the rear exit door of the bus, which is a few feet beyond the rear wheel.

Another witness generally corroborated the police officer's testimony with reference to the plaintiff's position in the street.

The driver of the bus testified that he was proceeding south on State Street and that as he approached Adams Street the traffic light was red for him and he stopped approximately two or three feet back of the crosswalk line; that after the light had turned for north and south traffic he moved up and commenced to turn from State into Adams Street; that at the time he stopped to let pedestrians cross; that there were quite a few crossing both north and south and the bus stood still about 15 seconds and he then proceeded to complete his turn, creeping at one or two miles an hour; that he heard a thud and bump to the rear of the bus and somebody rapped at the doorway and said that a man had been hurt; that after he heard the bump the bus moved two or three feet and then stopped; that at the time the bus stopped it was on Adams Street at an angle, the front end facing southwest and the rear end, also on Adams Street, facing northeast, and the right side of the bus was eight or nine feet south of the north curb of Adams Street. The driver also testified that in order to effect

11h

such a right turn he drove forward on State Street, parallel to the crosswalk, a distance of at least 15 feet without turning, and that when he got somewhere across the middle of the street he started making his turn; that when he got somewhere near the center he turned his wheels and at that point made a sharp turn of the wheel because he had to turn it all the way to get the proper swing; that in a turn of this nature the forward part of the front wheels protrude outside the bus and that he turned the steering wheel to the right enough to bring his bus onto Adams Street; that he sounded no horn; that when he started up and when the front of the bus was going through the crosswalk he made an observation to his left and right and at that time there were still people standing in the street; that he then traveled through the crosswalk; that he did not see the plaintiff until after he had been hit.

A passenger in the bus testified that she was sitting in back of the driver. Her testimony was generally corroborative.

In the instant case the trial court in denying the plaintiff's motion for a new trial apparently indicated that he believed there was a question upon which reasonable men might differ as to whether or not the plaintiff was guilty of contributory negligence. The plaintiff had testified that he looked once to the left before he entered the crossing and that he did not look again, nor did he see the bus making the turn until immediately before it struck him. The bus according to the evidence was making the turn slowly.

In crossing a street or highway a pedestrian must make reasonable use of all of his senses in order to observe an impending danger, and while it is true that when crossing at an intersection he is not required to look in every direction during every instant of his progress, it is said:

11i

"The law does not say how often a pedestrian must look while crossing the street, except that he must look at such a time and place as will reasonably be of some benefit in protecting him and give knowledge of the condition of traffic, and, having looked as he started to cross, a pedestrian is not necessarily bound as a matter of law to look again.

"Whether, after looking before starting across an intersection, a pedestrian must continue to look while crossing, depends on many circumstances and conditions . . . and his negligence is usually one of fact for the jury. He is required to look as often and as carefully as a reasonably prudent man under like circumstances. Where legislation gives the pedestrian the right of way at intersections it creates a preference but not an absolute right in the pedestrian's favor."

Blashfield, Cyclopedia of Automobile Law and Practice, vol 2A, sec 1472. To the same effect is Moran v. Gatz, 390 Ill 478, 62 NE2d 443 (cited with approval in Reese v. Buhle, 16 Ill App2d 13, 147 NE2d 431), where the court says:

"The generally accepted rule is that while a statute such as ours gives pedestrians the right of way, it does not confer upon them an advantage which necessarily absolves them from guilt of contributory negligence. Each case must be determined from its particular facts. The question of contributory negligence is one which is preeminently for the consideration of a jury. It cannot be defined in exact terms and unless it can be said that the failure of the plaintiff to look again was so palpably contrary to the conduct of a reasonably prudent person as to show contributory

11j

negligence, the issue is one for the jury. (Blumb v. Getz, 366 Ill 273.) . . .

"The rule seems to be quite universal that a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of approaching traffic, is not contributory negligence as a matter of law but it is a question for a jury whether he was in the exercise of ordinary care for his own safety. . . . [Citing cases.]"

In Reese v. Buhle, supra, where the judgment of the trial court was reversed because the court failed to properly instruct the jury concerning the respective rights of pedestrians and a motor vehicle when the plaintiffs-pedestrians were crossing in a properly designated crosswalk, the court cites with approval Mequet v. Algiers Mfg. Co., 147 La 363, 367, 84 So 904, 905 (1920), and says with respect to that case:

"An excellent statement . . . is to be found in Mequet v. Algiers Mfg. Co., . . . where it is said that while motor vehicles have become a very important and necessary part of the business and social life of the people and are therefore permitted to operate on the public streets, though carrying with them great danger and destruction, yet with respect to pedestrians using crosswalks they have the right to assume that motorists will observe that high degree of care imposed by the circumstances. The court said:

" 'No other condition is consistent with the common and necessary right to use such avenues of intercourse. The frequent occurrence of collision and accidents argue most forcefully for a rigid enforcement of all traffic regulations intended to prevent such occurrences. Otherwise, the individ-

11k

ual who, through choice or necessity, adopts the original mode of locomotion provided by nature, must "take his life and limb in his own hands." We do not mean by this that he is to be excused for failing to use his own senses to avoid being injured; but the greater duty and care rests upon those who use these dangerous agencies carrying such great possibilities of harm.' "

 In the instant case, taking into consideration that the bus was turning and moving toward the pedestrian at the time when he was crossing in the intersection, that the pedestrain looked to the left only once at the time he started to cross the street, and that he did not see the bus until he was struck, we agree with the trial court that reasonable men might differ on the inferences which properly might be drawn from the evidence adduced in the case and that the question was one for the determination of the jury. Nor can it be said that the jury's verdict was palpably erroneous and that from the evidence an opposite conclusion was clearly evident. The verdict is not against the manifest weight of the evidence.

The plaintiff in his brief cites and quotes from Courviosier v. Burger, 215 P 93 (Cal), and Meyers v. Swanson, 163 Minn 508, 203 NW 624. The Courviosier case holds that in a personal injury action where there is conflicting evidence the question is a question of fact for the jury, and that where a pedestrian starts to cross a street at the place ordinarily used by pedestrians and before leaving the sidewalk looks carefully up and down the street but does not look again, he is not guilty of contributory negligence *as a matter of law*. The Meyers case holds that the rights of a pedestrian are equal to those of a driver, that each is bound to exercise reasonable care and to act with due regard for the rights of the other, and

11-1

that a pedestrian crossing a street at a proper place has no duty to constantly watch an automobile which without warning turns a corner and strikes him. The plaintiff cites several cases from other jurisdictions, all of which are generally in accord with the rule above stated.

■■■ Plaintiff also contends that the defendant was guilty of negligence because at the time when the bus was being turned a warning was not sounded, and cites chapter 95½, paragraph 162, Illinois Revised Statutes. That section provides that a turn from a direct course upon a highway should not be made until the movement can be made with reasonable safety, "and then only after giving a clear audible signal by sounding the horn if any pedestrian may be affected by such movement." In Hestand v. Clark, 345 Ill App 480, 485, 103 NE2d 652, 654, the court says:

"Hence the rule in our law that neither negligence sufficient to sustain liability nor contributory negligence sufficient to defeat liability can arise solely from proof of a violation of the statute. Such violations must in addition be shown to have proximately contributed to the injury before liability or the lack of it can be predicated thereon. This was a question of fact for the determination of the trial court, sitting without a jury."

Nor is plaintiff helped by Plewe v. Chicago Motor Coach Co., 283 Ill App 57, in which case the driver had actual knowledge of persons passing in front of his bus while he was making the turn and under such circumstances had the duty to allow sufficient time to permit the plaintiff to reach the curb in safety.

As we have stated, we are in accord with the trial court's observation that the plaintiff has failed to

11m

prove by a preponderance of the evidence that he was not guilty of contributory negligence. The trial court expressed no opinion as to whether or not from the weight of the evidence the jury should have found the defendant guilty of negligence.

 The plaintiff has argued that the court should have granted a new trial in any case because of errors committed in the trial of the case. One of the errors argued is alleged misconduct of the attorney for the defendant with reference to a certain photograph. During the examination of the police officer who was on duty at State and Adams Streets on the night of the occurrence the officer had testified that he, after the accident, saw the bus on Adams Street west of State on a diagonal blocking the westbound traffic on Adams Street, and that the front of the bus was pointed southwest and its rear was pointed northeast. The bus was completely on Adams Street and the left front of the bus was 83 or 84 feet from the south curb. The back end of the bus was in the east end of the crosswalk on the west side of the street, and it was three-fourths of the way around the corner on Adams Street. He testified that the front of the bus was in the lane near the south curb. This testimony was neither clear nor entirely comprehensible. On cross-examination the attorney for the defendant had a photograph marked as its exhibit. It was a photograph of the intersection, and in the photograph was a bus, similar to the one in question, turning into the intersection. The attorney for the plaintiff objected to the use of the photograph because of the fact of the presence of the bus. Counsel for the defendant stated that he was only going to use it for the purpose of showing the witness the white lines in the street. However, he did suggest that the witness turn the picture so the jury could see it. Counsel for plaintiff objected and there were certain

11n

discussions between court and counsel with reference to the picture. The court, when counsel for a second time requested the officer to turn the picture so that the jury could see it, sustained the objection of the plaintiff, and the court said the only purpose that the officer could use the picture for was to refresh his recollection. Thereupon the officer testified that the back end of the bus was in the second lane from the north curb and it would be approximately 9 or 10 feet from the north curb of Adams Street. Subsequently counsel for the defendant offered the picture in evidence. The plaintiff objected and stated that the court had already expressed an opinion with reference to the inadmissibility of the picture. The court had in fact already said that he would not permit that particular photograph to be introduced except by agreement. The court sustained the objection of the plaintiff. Counsel acted improperly in offering the picture in evidence after the court had already ruled it could not be admitted except by agreement. It was also improper to make repeated attempts to have the picture turned so the jury could see it. From the record it does not appear that anything was said or done in the various discussions with regard to the exhibit which did or could have influenced the jury so as to make it reversible error. The court ruled properly and promptly, and the jury had no opportunity to see the picture.

Counsel further argues that the defendant attempted to lay a foundation for impeachment during the cross-examination of certain witnesses without the impeachment being completed by subsequent proof that such statements were in fact made. In the post-trial motion this objection is general and not specific as required under the statute. In any case we do not

11-o

feel, considering the testimony of the witnesses as a whole, that reversible error was committed.

 In his post-trial motion the plaintiff set out certain instructions to which he had objected, merely stating therein that the court erred in giving the jury "improper and erroneous" instructions and in failing to "properly instruct the jury as to the law, it being the contention of the plaintiff that each of the following instructions, given at the request of the defendant and read to the jury by the Court, incorrectly stated the law applicable to the case." It has been repeatedly held that in order to present alleged error in the giving of instructions it is necessary in the instruction conference to bring to the attention of the trial court the specific objections now urged. In Saunders v. Schultz, 20 Ill2d 301, 314, 170 NE2d 163, 170, the court says:

> "Furthermore, as noted by the Appellate Court, since defendant did not assert the grounds now urged against the particular instructions at the instruction conference, his objections thereto are not well taken when interposed for the first time on review. Onderisin v. Elgin, Joilet and Eastern Railway Co., 20 Ill App2d 73, 77–78."

In the Onderisin case the court had the same question before it and said: "Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objection and then be given the advantage of predicating error thereon by urging the error for the first time in a post-trial motion." See also Kotowsky v. Cook, 29 Ill App2d 116, 172 NE2d 502; Cross v. Blood, 22 Ill App2d 496, 161 NE2d 349.

The plaintiff made a motion in this court for leave to amend the record and abstract to show that the

11p

court dismissed the jury because the court was going to discuss the instructions with counsel. This amendment would add nothing material to the record. The plaintiff also made a motion in this court for leave to file an affidavit of the plaintiff's attorney with regard to what occurred at the time in the trial court with regard to instructions. In his affidavit the plaintiff states that there was an informal conference on instructions, that court reporters were not present, and that the plaintiff had made specific objections to the instructions now questioned before this court. A counter-affidavit was filed by the defendant. The affidavit of the attorney for the defendant is in direct opposition to that of the plaintiff. This court took the motions with the case.

This case particularly illustrates the soundness of the rule requiring specific objections to be made in the conference with the trial court. In one of the instructions there is a typographical error which could have been readily corrected by the trial court, and probably would have been, if it had been called to his attention. We have nothing in the record before us permitting us to pass on the question of instructions. Nor can we permit parties in this court to supplement the record by affidavit of counsel. (In his affidavit the counsel for the plaintiff does not set out any specific objections which were made to the questioned instructions at the time of the conference on instructions.) In La Duke v. Morrison, 30 Ill App2d 484, 175 NE2d 292, the court says:

"The only questions which could be considered by the reviewing court were those existing at the time when the notice of appeal was filed. Amer. Smelting Co. v. City of Chicago, supra; Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d

11q

43, which cites Simon v. Balasic, 316 Ill App 442, 45 NE2d 98, as holding that after the notice of appeal was filed the trial court had no power to enter any order involving a matter of substance; Bollaert v. Kankakee Tile & Brick Co., 317 Ill App 120, 45 NE2d 506. See also Wolcott v. Village of Lombard, 387 Ill 621, 57 NE2d 351. It has been held that a post-trial motion may be amended, but the furthest that the courts have gone is to permit the amendment during argument on the post-trial motion in the trial court. Taylor v. Hughes, 17 Ill App2d 138, 149 NE2d 393."

Plaintiff's motions are denied and the instructions will not be considered in this opinion.

 The plaintiff also argues that counsel for the defendant made an improper argument to the jury. Again in the post-trial motion the objection is raised in the most general terms, and even had it been properly raised we do not feel, considering the objections made by the plaintiff during the argument and the rulings of the court, that there was reversible error.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DEMPSEY and SCHWARTZ, JJ., concur.