Raymond Carter and Mary Carter, Plaintiffs, Ray-
mond Carter, Plaintiff-Appellee, v. Zula Winter
a/k/a Mrs. A. E. Winter, and Theresa O. Hoenow,
Defendants-Appellants.

Gen. No. 10,543.

Fourth District.

July 30, 1964.

Giffin, Winning, and Lindner & Newkirk, of Springfield (Alfred F. Newkirk, of counsel), for appellants.

Robert Weiner, of Springfield, for appellee, Raymond Carter.

REYNOLDS, J.

This is a personal injury action growing out of a collision between an automobile driven by defendant Theresa Hoenow and owned by defendant Zula Winter, and an automobile driven by plaintiff Raymond Carter. The accident occurred on December 18, 1960, at about 3:00 o'clock p. m. on U.S. Route No. 66, a short distance north of Springfield, Illinois. The weather was clear and cold, and the pavement was dry. The highway at the point of collision is four-laned, each lane being 10 feet in width, with two lanes for northbound traffic and two lanes for southbound traffic. There is no curb, or separation of the two inner lanes other than a center line on the pavement. The highway is concrete.

Raymond Carter, with his wife in the front seat with him and their small child standing behind them, started from his home which is a short distance east of the highway, and drove his automobile on a private driveway until he came to U.S. 66. His testimony and that of his wife was, that he stopped just before he entered the highway, then drove directly across the two northbound lanes, and the inner lane of the southbound lane, until he entered the outer southbound lane and there he turned to the left and proceeded down the outside southbound lane at a speed of about 35 miles per hour until he was struck in the rear by the Winter automobile. The left rear corner of Carter's automobile was struck by the right front corner of the Winter automobile. The collision knocked the Carter automobile down the road until it

470

was braked to a stop by the driver. The Winter automobile stopped about the point of impact. Carter said he saw the Winter car when he was about 30 feet east of U.S. 66. He estimated it was then about 400 yards to the north. At that point, he drove across the three lanes of the highway, and then turned south, in the outer southbound lane. He estimated the speed of the Winter car at 75 or 80 miles per hour. He said he continued to watch the Winter car as he drove across U.S. 66 and until he made his turn and headed south. His estimate was that he traveled 120 to 130 feet in the southbound lane until the collision. On cross-examination, he admitted that he last saw the Winter car through the right front door at a distance of about 30 to 40 yards away. Mrs. Carter in her testimony estimated the Winter car to be three to four hundred yards away when the Carter car stopped on the east side of the highway. Mrs. Carter testified she was knocked out for a few seconds and when she regained consciousness, she was sitting in the front seat with Mr. Carter sitting beside her holding to the steering wheel. Mrs. Carter was not seriously injured and apparently the child in the back was not injured. Raymond Carter, immediately after the accident went across the highway to his brother Luke Carter's home to get his brother and then went back to the scene of the accident. Then Raymond Carter, Luke Carter, Mrs. Raymond Carter and the little boy went to the Luke Carter home. Neither Raymond Carter, his wife or his son went to the hospital. The next day, Raymond Carter returned to his regular work in the mill of Luke Carter. The next day he drove the mill truck to Arkansas and was gone about four days. About a week after the accident, he helped rope and load a 200 pound hog in the truck. On the 11th day after the accident plaintiff Raymond Carter had a heart attack and while in the hospital had several

strokes which resulted in partial paralysis and total disability. Plaintiff's action was based on the claim that the injuries sustained in the collision caused the heart attack.

The cause was tried before a jury and the jury found for the plaintiff and assessed his damages at $100,000. Defendants' post-trial motion being denied, defendants appeal to this court.

On appeal defendants raise the following points:— (1) There was no credible evidence of negligence on the part of the defendants, (2) Plaintiff was guilty of contributory negligence, (3) There was no competent evidence of causal connection between the accident and plaintiff's heart attack and disablement, and (4) The trial court committed prejudicial error in refusing Defendant's Instruction No. 15.

Defendant Theresa Hoenow, an employee of Zula Winter, was driving the Winter car. Riding beside her in the front seat was Mrs. Winter's brother, Ellsworth Brown. Mrs. Winter was in the back seat, but her eyesight was such that she was almost totally blind and could not see what was happening. Both Mrs. Hoenow and Mr. Brown estimated the speed of the Winter car at 50–55 miles per hour before the brakes were applied. Mrs. Hoenow testified she first saw the Carter car when it was crossing the inner southbound lane. She estimated the distance at between 100 and 125 feet. She attempted to pull to the left but was unable to do so and when the collision occurred, the Winter car was straddling the dividing line between the two southbound lanes.

Mr. Ellsworth Brown, testified he first saw the Carter car when it was crossing the two inner lanes. It was then about 100 to 125 feet away. This witness testified that the Carter car came across the two lanes and then turned into the lane in which the Winter car was traveling south. This witness stated he had

472

observed the posted speed limits from time to time and Mrs. Hoenow was driving within the speed limits.

Illinois State Highway Policeman James Merrifield was called to the scene of the accident and arrived shortly after it happened. He testified he found skid marks made by the Cadillac of Mrs. Winter and these marks were 112 feet in length. He stated the point of impact was 169 feet south of the line of the Carter driveway extended across the highway.

Luke Carter, brother of the plaintiff, testified he saw the Winter automobile 1000 feet away, watched it and his brother's car, and saw the accident. He saw this through a window, seated about two feet from the window. He estimated the speed of the Winter car at 80 miles per hour. He estimated the speed of the Carter car just before the collision at 35 miles per hour. Although Luke Carter testified he saw the accident, it does not appear that he left the house, but stayed inside until his brother came back across the road to enlist his help.

Alexander Langsdorf, a witness for the plaintiff, testified as an expert on the coefficient of friction between tires and dry concrete pavement, or in other words, skid marks and their distances. This witness was asked a long, involved and complicated hypothetical question and his testimony was that under the facts as posed by the hypothetical question the accident could not have happened, basing his answer on the testimony of Mrs. Hoenow that at the time of the collision she was traveling 30 miles per hour and the testimony of Mr. Carter that he was traveling 35 miles per hour. This witness stated that if the speed of the Cadillac was 70 miles per hour, the speed of the Cadillac at the time of impact would have been 47 miles an hour which would have caused a mild jolt. Basing his answer on a speed of 80 miles per hour by the Cadillac the speed of the Cadillac at the time of

the collision would have been 60 miles per hour. This witness also testified that if a person driving along the highway is struck in the rear by another vehicle, the person so struck would be thrown forward and not backward.

George Engelbach, a transport driver, testified he was driving north on U.S. 66 and saw the accident. He was driving in the outer northbound lane. He first saw the Carter car come from behind a fence on the east side of the highway and said it did not stop, but seemed to pick up speed as it entered the highway. That the Carter car slanted across the highway in a southwesterly direction. This witness estimated the distance of the Cadillac from the Carter Mercury at 50 feet when the Mercury crossed the center of the highway. This witness stated the Cadillac was not exceeding the speed limit. When the witness stopped his transport, he was within 200 feet of the point of impact of the two vehicles. He was near the Carter driveway. This witness stated unequivocally that Carter did not stop before entering the highway, but that he seemed to be picking up speed, and that Carter was slanting across the highway to the southwest. He showed wet tire marks of the Carter car to the state trooper.

Dr. Leon Lando, a general practitioner, was the attending physician when Carter was admitted to the hospital on December 29, 1960. He found no outward evidence of any injury to Carter and based on subjective symptoms, concluded Carter had suffered an acute coronary occlusion. When first admitted, Carter did not tell Dr. Lando about the alleged chest injury, but did so later. The doctor's conclusion, based upon the statement of Carter that he was thrown with great force against the steering wheel, was that there could or may have been a causal relationship between the injury to his chest wall and

474

the following coronary occlusion. Dr. Lando is not a heart specialist, and later called in Dr. Chauncey Maher as a heart specialist on the case.

Dr. John J. Meyer, a doctor of general and traumatic surgery, examined Carter in June 1963, two and one-half years after his first heart attack. This witness, based upon the story that Carter was thrown against the steering wheel, testified that there was a possibility that there was a connection between the alleged chest injury and the heart attack. On cross-examination when asked if he could say that the heart attack was caused by the accident, said that "All I can say is that I can't say it wasn't." Questioned if the connection was a probability, the witness would not answer, except to qualify his answer, that without examining the subject at the time of the injury he could not say.

Dr. Alton Joseph Morris, testified as to three possibilities. First, there could have been a direct injury to the heart muscle, Second, there could have been a direct injury to the blood vessels of the heart or the coronary arteries, and Third, coincidental occurrence. The first two possibilities were based upon the story of Carter being thrown against the steering wheel. On cross-examination, this doctor said that based upon such an injury, the heart attack could have been connected with the injury. That such connection was a possibility, but he was not excluding the possibility that the heart attack was totally unrelated to the accident. This witness had not treated or examined Mr. Carter.

Dr. Thomas J. Walsh, asked a hypothetical question based upon a person being thrown against the steering wheel of an automobile and a subsequent heart attack some 11 days later, stated there may, or could have been, a relationship between the trauma to his chest wall and the subsequent cardiac problem.

475

This witness admitted that there was the other possibility and, that was, that the occlusion was purely coincidental to the trauma.

The testimony of Dr. Lando, Dr. Meyer, Dr. Morris, and Dr. Walsh was based upon the supposition and theory that Carter had been thrown into the steering wheel with great force by the impact of the collision.

Dr. Chauncey Maher, a heart specialist, called in by Dr. Lando, first examined Mr. Carter on January 7, 1961, some nine days after he suffered his initial heart attack. His testimony, based upon the history of the case given him by Mr. Carter, the history given him by Dr. Lando, and his examination of the patient, was that there was no causal connection between the accident and the heart attack. Asked if Carter or Mrs. Carter had told him about any injury to the chest, he said "No." He said Carter told him he had been thrown over the back seat by the collision and had landed on the top of the back seat and had sustained injuries to the back of his neck and the upper parts of the muscles between his shoulders.

The first point raised by the defendant on appeal is that there was no credible evidence of negligence on the part of the defendants, and that the court should have directed a verdict for the defendants. With this contention, we cannot agree. There was evidence of skidding for a distance of 112 feet by the Winter car. There was evidence of the expert on friction between rubber and pavement, Dean Langsdorf, that the Winter car must have been traveling at a high rate of speed, well over the speed limit. There is the testimony of Luke Carter, Raymond Carter and Mary Carter estimating the speed of the Winter car at 80 miles per hour. There is the evidence of the Carters, Raymond and Mary, that they had made the turn and were proceeding south on the

476

highway when hit, which, coupled with the evidence of the State Highway Policeman Merrifield, placed the point of impact some 169 feet south of a line projected westerly from the Carter roadway across U.S. 66. While this testimony is not conclusive, it is in the record and cannot be ignored by the trial court or this court.

The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as a question remains whether either party had performed his legal duty or has observed that degree of care imposed upon him by the law, and determination of question involves the weighing and consideration of the evidence, the question must be submitted as one of fact. Peterson v. Hendrickson, 335 Ill App 223, 81 NE2d 266; Lowe v. Gray, 39 Ill App2d 345, 188 NE2d 890; Cloudman v. Beffa, 7 Ill App2d 276, 129 NE2d 286. Even where the facts are admitted or undisputed, but where a difference of opinion as to the inference that may legitimately be drawn from them exists, the questions of negligence and contributory negligence ought to be submitted to the jury—it is primarily for the jury to draw the inference. Lowe v. Gray, 39 Ill App2d 345, 188 NE2d 890.

The law in reference to the defendants' contention that there was no credible evidence of negligence on the part of the defendants and that the court should have directed a verdict for the defendants as a matter of law, is equally applicable to the defendants' second contention, that the plaintiff Raymond Carter was guilty of contributory negligence as a matter of law.

Defendants contend that there was no competent evidence of causal connection between the accident and the plaintiff's heart attack. This question also, is a question of fact for the jury. Four of the doctors

testified, based upon the supposition that Carter had been thrown against the steering wheel with great force and had sustained a chest injury at the time, that there was a possibility that there was a causal connection between the supposed chest injury and the heart attack, although all of them admitted that the heart attack could have been coincidental. Dr. Chauncey Maher, the heart specialist testifying for the defendants, testified positively that there was no such connection.

The final contention of the defendants is that the trial court committed reversible and prejudicial error in refusing to give Defendant's Instruction No. 15. The trial court refused this instruction on the ground that the defendants had not pleaded the Statute involved in their answer. The question raised in the instruction was the right of a driver of a vehicle to enter or cross a highway from a private road or driveway and yielding the right-of-way to a vehicle on the highway. Supreme Court Rule 13 provides that if a breach of statutory duty is alleged, the statute shall be cited in connection with the allegation. To cite means to quote, as by way of authority or proof. Does that mean that the Chapter and Section number be set out? We think not. If the breach of statutory duty is alleged, the setting out of the language of the statute is sufficient. The defense of contributory negligence was available to the defendants upon their general denial that the plaintiff was not in the exercise of due care. Kelly v. Fletcher-Merna Co-Operative Grain Co., 29 Ill App 2d 419, 173 NE2d 855. Moore v. Daydif, 7 Ill App2d 534, 130 NE2d 119. If the instruction correctly stated the provision of the Statute, and related to the question of whether the plaintiff at the time of the accident was in the exercise of due care, it should have been given. But, this court does not regard the re-

fusal to give the instruction as reversible error. This court has held that the instructions must be considered as a series. Waugh v. Cender, 29 Ill App2d 408, 173 NE2d 860. In this case, the giving of Defendants' Instruction No. 14, stated the law as to contributory negligence. If Raymond Carter was negligent, even though it was proved by the greater weight of the evidence that the defendants were negligent, Carter cannot recover. The doctrine of comparative negligence has not been recognized in Illinois.

While our courts have been reluctant to override the verdict of a jury on a question of fact, it is well settled that in proper cases the court will not only reverse the findings of a jury, but that the courts have a duty to do so, where the verdict of a jury is against the manifest weight of the evidence. The right of a reviewing court to reverse where the verdict is against the manifest weight of the evidence may only be exercised where the jury's verdict is palpably erroneous and wholly unwarranted from the manifest weight of the evidence. Benkowsky v. Chicago Transit Authority, 28 Ill App2d 257, 171 NE2d 416; Vasic v. Chicago Transit Authority, 33 Ill App 2d 11, 180 NE2d 347, Turner v. Seyfert, 44 Ill App2d 281, 194 NE2d 529. For the reviewing court to substitute its judgment for that of a jury the verdict must be against the manifest weight of the evidence, that is, an opposite conclusion be clearly evident. Niman v. Pecatonica Livestock Exchange, Inc., 13 Ill App2d 144, 141 NE2d 327; Arboit v. Gateway Transp. Co., 15 Ill App2d 500, 146 NE2d 582; Turner v. Seyfert, 44 Ill App2d 281, 194 NE2d 529.

Whether the verdict was against the manifest weight of the evidence, involves three questions. First, were the defendants negligent? Second, was the plaintiff guilty of contributory negligence? Third, was there a causal connection between the accident

479

and the heart attack of the plaintiff? In considering these questions, this court is mindful of the rules of law as above stated and it has carefully considered all the evidence in the light of those rules. Upon such consideration it seems clear that the verdict of the jury and the judgment entered thereon, is clearly and palpably against the manifest weight of the evidence. There are too many "Ifs, assumptions and conclusions based upon assumptions," in this case, which apparently the jury adopted as facts.

 Was the defendant Winter, through her agent and servant Hoenow, guilty of negligence? If there was any negligence it would have to rest upon the theory of excessive speed. It is conceded that the Winter car was in its proper lane. Mrs. Hoenow, Mr. Brown and the transport driver testified the speed to be legal, and not exceeding the speed limit. Raymond Carter, Mary Carter, and Luke Carter fix the speed at 80 miles per hour. The expert, Dean Langsdorf, basing his testimony upon assumptions as to the speed of the Carter car and the Winter car, fixed the speed of the Winter car at 80 miles per hour. The skid marks were 112 feet long. The defendants call the testimony of Luke Carter "incredible." We are inclined to agree. This witness testified he was sitting in his residence about two feet from a window and saw the Winter car approximately 1000 feet to the northwest, and then saw the collision some 169 feet south of the Carter driveway, which would be southwest of his home. In other words, if this witness is to be believed, sitting two feet from a window, he had peripheral vision of over 200 degrees. If this witness saw the collision and knew his brother was in it, why did he sit in his home and wait until his brother came across the road to ask for help? Raymond Carter made a prior statement in answer to a deposition, that his brother was not a witness.

Yet, Raymond and his brother, according to their testimony, talked the matter over that night. This court attaches very little weight to the testimony of Luke Carter.

Langsdorf testified, that basing his opinion upon a 30-mile speed of the Winter vehicle at the time of the collision, and 35 miles per hour of the Carter vehicle, the collision could not have happened. Unfortunately, for his testimony, it did happen. Assuming Langsdorf's figures were correct, if they were based upon false or wrong assumptions, they would be incorrect. All his projections were based upon a speed of 35 miles per hour by the Carter vehicle. If, Carter and his wife were wrong and their automobile had made the square turn as related by Carter, they would have to have picked up speed rapidly to attain the speed of 35 miles per hour. If they were traveling 25 miles per hour, then Dean Langsdorf's projections would not apply. However, upon the state of the evidence, this court cannot say that the verdict of the jury as to the negligence of the defendants, based on speed alone, was clearly and palpably against the manifest weight of the evidence.

■■ As to the question of contributory negligence on the part of the plaintiff, plaintiff and his wife testified they first saw the Winter car some 1000 to 1200 feet to the north as they stopped just east of the highway. Langsdorf testified a car traveling 60 miles per hour travels 88 feet per second. Assuming the Winter car was doing 80 miles per hour, it would travel 117 feet per second and take just about ten seconds to travel the 1200 feet. Carter testified that just as he made his turn into the west southbound lane he looked through his right front window and saw the Winter car about 100 to 125 feet away. In that time the Carter car had traveled from a standing start 30 feet to the east line of the highway and

then some 40 feet across the highway, reaching an attained speed sufficiently slow to allow him to make a square turn into the west southbound lane. He then traveled some distance before being struck from behind. Carter and his wife say he went straight across and turned. The transport driver said he slanted southwest across the highway and that he showed the wet tire marks of the Carter car to the state policeman. Assuming a start from a dead stop, a square turn south, and the necessary gradual pick-up from a standing start, several seconds must have elapsed for the Carter car to reach the point of impact. The most damaging testimony of all is Carter's testimony he saw the Winter car as he was making his turn and it was 120–125 feet away. If this was the situation, then Carter would be guilty of contributory negligence. It is necessary that Carter prove himself free of contributory negligence. Under these facts as shown by the evidence, we believe the weight of the evidence is that he did not so prove and that the manifest weight of the evidence shows that he drove directly into the path of the Winter car and was not, at the time, in the exercise of due care and caution for his safety.

The third question is whether there was a causal connection between the accident and the plaintiff's coronary occlusion and subsequent disablement. The evidence shows he worked the next day, went to Arkansas with the truck, helped load a hog for market, and carried on in an ordinary manner until his heart attack eleven days later. When he suffered the heart attack, he was attended by Dr. Lando, who called in Dr. Maher, a heart specialist, 9 days after the heart attack. Plaintiff did not complain of any injury to his chest or heart when examined by Dr. Lando or when examined by Dr. Maher. Neither of these doctors testified to any bruises to the chest, or

discoloration of the chest due to a blow or otherwise. He complained of the muscles in the back behind the shoulders and the back of the neck. Dr. Lando and Dr. Maher attended Mr. Carter at the time or shortly after his heart attack. Dr. Meyer saw him on June 4, 1963, two and one-half years after the heart attack. Drs. Morris and Walsh did not examine Mr. Carter at any time. None of the doctors testifying for the plaintiff would testify directly that the heart attack had a causal connection with the collision on December 18th, 1960. All of them testified, on the basis, that if Carter had suffered a strong blow to the chest in the collision, that there was a possible or probable causal connection between the heart attack and the injuries claimed sustained in the collision. All of these doctors refused to rule out the possibility of coincidental heart attack. Dr. Maher, the heart specialist called in by Dr. Lando and other than Dr. Lando, the only doctor to examine the plaintiff at or near the time of the heart attack, testified positively that there was no causal connection. All of the doctors testifying that there was a possibility of causal connection based their opinions upon the assumed blow to the chest, or injury to the chest, based upon the statement of the plaintiff that he was thrown with great force against the steering wheel. This assumed injury was not proven by the evidence. The testimony was that the seat was broken and the plaintiff was thrown upon the back shelf of the back seat. This is his own testimony and he is bound by it. The testimony is that the collision was a single collision. The Winter car stopped upon impact, and if the plaintiff was thrown to the back of his car, he could not have been thrown forward into the steering wheel. He made no complaint and told no one that he was thrown against the steering wheel until afterwards. He told Dr. Lando, but at no time told Dr. Maher.

483

The injury to the chest was not proven by the weight of the testimony and without such proof, the testimony of the medical witnesses, based upon such injury is valueless. If there was a failure to prove the injury to the chest, there was a failure to prove causal connection between the injury and heart attack. Unless there was such a causal connection, the total disablement of the plaintiff must be regarded as coincidental and in no way connected with the collision. This court must hold that the plaintiff failed to prove a causal connection.

In conclusion, this court holds that there was sufficient evidence to justify the trial court in denying a directed verdict for the defendants. However, the verdict of the jury was against the manifest weight of the evidence as to contributory negligence on the part of the plaintiff. But, if the plaintiff was not guilty of contributory negligence and the defendants were guilty of negligence, the proof is still totally inadequate to prove a causal connection between the injuries sustained by the plaintiff in the collision and his heart attack.

The judgment will be reversed.

Reversed.

DOVE, P. J. and WRIGHT, J., concur.